# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 21, 2011 Session

## ROBIN CLAIRE PEARSON GORMAN v. TIMOTHY STEWART GORMAN

**Appeal from the Chancery Court for Coffee County**
**No. 09186      Vanessa Jackson, Judge**

_____

**No. M2010-02620-COA-R3-CV - Filed November 16, 2011**

_____

Husband challenges the trial court's award of alimony in solido beginning after three years of rehabilitative alimony. We find no abuse of discretion and affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS, J., joined. FRANK G. CLEMENT, JR., J., filed a concurring opinion.

Roger James Bean and Bradley Joseph Eldridge-Smith, Tullahoma, Tennessee, for the appellant, Timothy Stewart Gorman.

Michael E. Griffin and Karen Sedora Price, Tullahoma, Tennessee, for the appellee, Robin Claire Pearson Gorman.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Robin Claire Pearson Gorman ("Wife") and Timothy Stewart Gorman ("Husband") were married in 1994 and have two minor children. Wife filed for divorce in May 2009 alleging grounds of inappropriate marital conduct, adultery, and irreconcilable differences. While initially denying inappropriate marital conduct or adultery, Husband later filed an amended answer admitting these grounds.

The matter was heard on November 3, 2010. Husband and Wife both testified. In a memorandum order entered on November 17, 2010, the trial court granted Wife a divorce

and, as agreed by the parties, named Mother the primary residential parent of the two minor children. With respect to the parties' earning capacity, the court made the following findings:

> The Court finds that both the parties have master's degrees in civil engineering. However, since 1998, the Wife has not worked in the field of engineering. By mutual agreement of the parties, she stayed home to care for the children. From the time he was in college, the Husband has worked for Roger's Group. He has received several promotions, and his career has steadily advanced. His current gross income is $12,455.85 per month ($9,129.25 net). He has regularly received yearly bonuses, and his bonus for 2010 was $17,384.00 gross ($9,900.00 net).
>
> Although the Wife has the education to be employed in the engineering field, she has not worked in the field for almost 12 years. The starting salary for engineers is approximately $50,000.00 per year; however, the Wife has been unable to find an engineering position in the Tullahoma area. She now desires to pursue a career as a math teacher in the public school system. She presently teaches at St. Paul's School, and her gross salary is $1,260.42 per month. It will require approximately three years for the Wife to obtain the education and certifications necessary to pursue a career as a teacher. Unfortunately, the salary she will earn teaching in the public school system will not be as much as she could earn working in the engineering field. It is the Wife's prerogative to choose a different career path, but the law requires that the Husband's child support obligation be based upon her earning capacity (i.e. $50,000.00 per year in the engineering field).

The court subsequently found that Wife was entitled to rehabilitative alimony of $2,000 per month for three years "in order to achieve an earning capacity that would permit her to enjoy a standard of living reasonably comparable to that enjoyed during the marriage." The court went on to state as follows:

> Even if the Wife were to find employment as an engineer with a starting salary, she would be just starting her career. While the Husband's career has steadily advanced, for the last twelve years she has been out of the job market. It will require some period of time for the Wife to develop her career to the point that she can afford a reasonable comparable lifestyle. Therefore, after the expiration of the period of rehabilitative alimony, the Wife is awarded alimony in solido in the amount of $2,000.00 per month for a period of 12 years.

The court made specific rulings regarding the division of marital assets and debts. Husband was ordered to assume and pay the two credit card debts. The parties' joint bank account was equally divided. Wife was awarded her 401k account, and the parties were to receive equal shares of Husband's 401k retirement and pension accumulated during the marriage.

In an order entered on March 11, 2011, the trial court incorporated by reference its previous memorandum and order and reiterated its rulings regarding rehabilitative alimony and alimony in solido. Husband was ordered to pay monthly child support in the amount of $1,563.00. The court gave a detailed listing of the marital property awarded to each spouse. Husband was ordered to pay Wife's reasonable attorney fees.

Husband appeals on the issue of the trial court's award of alimony in solido.

STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

A trial court has broad discretion to determine the need for spousal support, as well as the appropriate nature, amount, and duration of that support. Tenn. Code Ann. § 36-5-121; *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004). An award of spousal support will not be disturbed on appeal absent an abuse of the trial court's discretion. *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Under the abuse of discretion standard, a reviewing court cannot substitute its judgment for the trial court's judgment. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). Rather, a reviewing court will find an abuse of discretion only if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga–Hamilton County Hosp. Auth.,* 249 S.W.3d 346, 358 (Tenn. 2008); *see also Lee Med., Inc. v. Beecher,* 312 S.W.3d 515, 524 (Tenn. 2010). Therefore, "when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski v. Gonsewski*, No. M2009-00894-SC-R11-CV, 2011 WL 4116654, at *3, __ S.W.3d __ (Tenn. Sept. 16, 2011).

ANALYSIS

I.

We begin with a summary of the statutes and caselaw relevant to the propriety of a trial court's alimony award.

In 2000, our Supreme Court issued its opinion in *Crabtree v. Crabtree*, 16 S.W.3d 356 (Tenn. 2000), a case which has often been the starting point for subsequent cases concerning rehabilitative alimony. *Crabtree* involved the dissolution of a 23-year marriage. *Id.* at 357. The wife was a certified public accountant who began working part-time when the couple started a family; she was earning approximately $41,000 a year working out of the home at the time of the divorce. *Id.* The husband, a stockbroker, earned approximately $417,000 in the year preceding the divorce. *Id.* at n.1. The trial court awarded Ms. Crabtree rehabilitative alimony of $1,700 per month for five years, followed by alimony in futuro of $1,200 per month. *Id.* at 357-58. The Court of Appeals affirmed the alimony award. *Id.* at 358.

In analyzing the case, the Supreme Court focused on the statutory preference for rehabilitative alimony.[1] *Id.* The Court concluded that, "[i]f an award of rehabilitative alimony is justified by the parties' circumstances, a trial court initially should award rehabilitative alimony only." *Id.* at 360. Should the recipient's prospects of economic rehabilitation change, the court reasoned, the rehabilitative alimony award could be modified; if rehabilitation were not feasible, the court could then award alimony in futuro. *Id.* At the time of the initial alimony award, however, "a concurrent award of both types of alimony [rehabilitative and in futuro] is inconsistent." *Id.* The Court also noted that the trial court had not made any findings of fact regarding the statutory factors, thereby requiring the Court to make an independent review of the record to determine the preponderance of the evidence. *Id.*

The Court concluded that the award of alimony in futuro "is not justified and does not recognize or further the legislative purpose of encouraging divorced spouses to become self-sufficient." *Id.* The Court agreed with the trial court's conclusion that Ms. Crabtree could be rehabilitated, noting her education and earning capacity, estimated by Mr. Crabtree to be between $65,000 and $100,000 annually. *Id.* After reviewing all of the statutory factors, the Court affirmed the award of rehabilitative alimony for five years but increased the amount to $2,500 per month to assist Ms. Crabtree in making the transition to full-time employment. *Id.* at 361. The award of alimony in futuro was reversed. *Id.*

---

[1] At that time, the statutory provisions regarding alimony were codified at Tenn. Code Ann. § 36-5-101(d).

This court examined the implications of *Crabtree* in *Dempsey v. Dempsey*, No. M1998-00972-COA-R3-CV, 2000 WL 1006945 (Tenn. Ct. App. July 21, 2000), a case involving an award of alimony in futuro. The question raised in *Dempsey* was "the proper measure of economic rehabilitation to be used in determining if the disadvantaged spouse's attainment of that level is feasible." *Id.* at *2. While the relevant statutory provisions were not as detailed at they are now, they did state the general assembly's intent "that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for the payment of rehabilitative, temporary support and maintenance." *Id.* at *2, n.1 (quoting Tenn. Code Ann. § 36-5-101(d)(1) (2000) (now Tenn. Code Ann. § 36-5-121(d)(2))). Where rehabilitation was not possible, the statute allowed for long-term support. *Id.*; *see* Tenn. Code Ann. § 36-5-101(d)(1) (2000) (now Tenn. Code Ann. § 36-5-121(d)(3)). Based upon the statutes and caselaw, this court concluded that "a court should determine whether it is feasible for a disadvantaged spouse to improve his or her earning capacity to a 'reasonable level.'" *Dempsey*, 2000 WL 1006945, at *4. We then proceeded to consider whether this reasonable level should be related to the pre-divorce standard of living or the other spouse's earning capacity. *Id.* After a lengthy discussion of *Crabtree*, we reached the conclusion that the holding in *Crabtree* "indicates that this differential [between the earning capacities of the husband and wife][2] is not relevant to the question of the feasibility of rehabilitation, at least at the time of the initial determination of whether rehabilitation is feasible." *Id.* at *6 (footnote omitted). Based upon the statutory preference for rehabilitation and the Supreme Court's analysis in *Crabtree*, this court concluded that an award of rehabilitative alimony, rather than alimony in futuro, was appropriate. *Id.* at *7.

While *Crabtree* stands for the proposition that, at least at the time of the initial decree, rehabilitative alimony and alimony in futuro are inconsistent, a subsequent Supreme Court case declined to reach the same conclusion with respect to rehabilitative alimony and alimony in solido. *See Burlew v. Burlew*, 40 S.W.3d 465, 472 (Tenn. 2001). In several other cases, the Supreme Court emphasized that, while the marital standard of living is one factor to be considered in awarding alimony, a trial court must consider all of the relevant statutory factors. *See Bratton v. Bratton*, 136 S.W.3d 595, 604 (Tenn. 2004); *Robertson v. Robertson*, 76 S.W.3d 337, 340 (Tenn. 2002). In *Robertson*, the court cited *Crabtree* for the following principles:

> The prior concept of alimony as lifelong support enabling the disadvantaged
> spouse to maintain the standard of living established during the marriage has

---

[2]Ms. Dempsey did not work outside of the home until the end of the marriage, when she earned seven to eight dollars an hour; Mr. Dempsey earned in excess of $60,000 per year. *Dempsey*, 2000 WL 1006945, at *1.

been superseded by the legislature's establishment of a preference for rehabilitative alimony. The parties' incomes and assets will not always be sufficient for them to achieve the same standard of living after divorce that they enjoyed during the marriage.

*Robertson*, 76 S.W.3d at 340.

In 2003, the general assembly enacted revisions to the provisions of Tenn. Code Ann. § 36-5-101(d) governing alimony. *See* 2003 TENN. PUB. ACTS ch. 305. In 2005, the general assembly again revised the alimony provisions and moved them to Tenn. Code Ann. § 36-5-121. *See* 2005 TENN. PUB. ACTS ch. 287. The new provisions added transitional alimony to the recognized forms of alimony and specifically allow for concurrent awards of rehabilitative and in futuro alimony.[3] *See* Tenn. Code Ann. § 36-5-121(d), (g); *Anderson v. Anderson*, No. M2005-02029-COA-R3-CV, 2007 WL 957186, at *5 (Tenn. Ct. App. Mar. 29, 2007). The provisions added in 2003 and 2005 define what it means to be rehabilitated and contain the following statements of public policy:

- "Spouses have traditionally strengthened the family unit through private arrangements whereby one (1) spouse focuses on nurturing the personal side of the marriage, including the care and nurturing of the children, while the other spouse focuses primarily on building the economic strength of the family unit. This arrangement often results in economic detriment to the spouse who subordinates such spouse's own personal career for the benefit of the marriage. It is the public policy of this state to encourage and support marriage, and to encourage family arrangements that provide for the rearing of healthy and productive children who will become healthy and productive citizens of our state." Tenn. Code Ann. § 36-5-121(c)(1).

- "The general assembly finds that the contributions to the marriage as homemaker or parent are of equal dignity and importance as economic contributions to the marriage. Further, where one (1) spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living

---

[3]As this court recognized in *Anderson v. Anderson*, No. M2005-02029-COA-R3-CV, 2007 WL 957186, at *5 (Tenn. Ct. App. Mar. 29, 2007), the provisions of Tenn. Code Ann. § 36-5-121(d)(4) supersede the holding of *Crabtree* with regard to concurrent awards of rehabilitative and in futuro alimony. The statute now recognizes that, in some cases, only partial rehabilitation is possible. *See* Tenn. Code Ann. § 36-5-121(d)(4); *Anderson*, 2007 WL 957186, at *5-6.

expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties." Tenn. Code Ann. § 36-5-121(c)(2).

Pursuant to Tenn. Code Ann. § 36-5-121(d)(5), "[a]limony in solido may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate."

The most recent Supreme Court case relevant to our discussion is *Gonsewski v. Gonsewski*, 2011 WL 4116654. The Supreme Court stated the issue presented as "whether alimony in futuro should be awarded to a spouse who has a college degree, good health, a stable work history in a relatively high paying job, and a lack of demonstrated need for such long-term alimony." *Id.* at *1. The Gonsewskis were married for 21 years and had two children, who were adults at the time of the divorce. *Id.* Both spouses worked throughout the marriage–the wife as an information technologist with the State of Tennessee with a base salary of $72,000, and the husband as an accountant with a gross income of $137,418 and a bonus of $34,726 in 2008. *Id.* The husband testified that the bonuses he received in 2007 and 2008 were unusually large. *Id.* The trial court divided the marital property about equally and determined that the wife was not entitled to alimony, citing her stable job with the State, good income, and her share of the equity in the marital home (which the court considered sufficient to obtain another residence). *Id.* at *2. The Court of Appeals reversed the trial court's decision regarding alimony and ordered the husband to pay alimony in futuro of $1,250 per month, noting that alimony in futuro was "necessary to mitigate the harsh economic realities of divorce" in light of the disparity in the parties' incomes. *Id*

The Supreme Court emphasized the "legislative preference favoring short-term spousal support over long-term spousal support, with the aim being to rehabilitate a spouse who is economically disadvantaged relative to the other spouse and achieve self-sufficiency where possible." *Id.* at *7 (citing Tenn. Code Ann. § 36-5-121(d)(2)-(3)). The Court further stated that "alimony in futuro should be awarded only when the court finds that economic rehabilitation is not feasible and long-term support is necessary."[4] *Id.* Based upon on the statutory factors, the Court concluded that alimony in futuro should not have been awarded because alimony in futuro was intended to apply when the spouse could not be rehabilitated. *Id.* at *8. Tenn. Code Ann. § 35-5-121(f)(1), cited by the Court, provides, in pertinent part:

> Such alimony [in futuro] may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning

---

[4]We note that Tenn. Code Ann. § 36-5-121(d)(4) allows for an award of alimony in futuro "either in addition to an award of rehabilitative alimony, where a spouse may be only partially rehabilitated, or instead of an award of rehabilitative alimony, where rehabilitation is not feasible."

that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.[5]

In reversing the decision of the Court of Appeals and reinstating the trial court's decision, the Court specifically cited the wife's strong earnings record, the absence of evidence regarding what (if anything) she could do to alter her earning capacity to allow her post-divorce standard of living to be reasonably comparable to that applicable during the marriage,[6] the little amount of evidence regarding the marital standard of living, and the lack of evidence regarding the husband's expected post-divorce standard of living.[7] *Gonsewski*, 2011 WL 4116654, at *8. The Court interpreted the earnings evidence as showing the wife with a base salary of $72,000 a year and longevity bonuses[8] and husband with a base salary of $99,900 with the likelihood of decreasing bonuses. *Id.* at *9. The Court also mentioned that the husband had taken out loans to help fund the children's college education. *Id.*

Noting that the award of alimony in futuro by the Court of Appeals in this case was inconsistent with its decision in *Crabtree,* the Court wrapped up its analysis as follows:

In short, Wife has the ability to support herself and, absent an abuse of discretion, we are not inclined to second-guess the trial court's decision not to award alimony in futuro. While we recognize that the record demonstrates a likelihood that Husband's income may continue to exceed Wife's by some extent, and that Wife's post-divorce lifestyle may decline to some extent, we are not willing to overrule the trial court on this basis. The economic realities are such that it is likely that Husband's standard of living will also decline as he establishes a separate household without Wife's income. We reiterate that

---

[5]This is consistent with the statutory definition of "rehabilitated" set forth in Tenn. Code Ann. § 36-5-121(d)(2).

[6]The Court cited Tenn. Code Ann. § 36-5-121(f)(1) and interpreted its provisions as contemplating proof as to the "prospect or feasibility of Wife making any 'reasonable efforts.'" *Gonsewski*, 2011 WL 4116654, at *8.

[7]The Court was "not inclined to speculate about these matters." *Gonsewski*, 2011 WL 4116654, at *8.

[8]Wife's most recent longevity bonus was $1,500. *Id.* at *1.

"two persons living separately incur more expenses than two persons living together. Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle once the proceedings are concluded."

*Id.* at *10 (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)).

Perhaps the two most significant points we are to derive from *Gonsewski* are the great deference appellate courts are to give to the trial court's decisions regarding alimony and the disfavor for long-term alimony. As applied to the case before us, the deference factor suggests upholding the 12-year, $2,000 per month award of alimony in solido, while the disfavor for long-term alimony suggests striking down the award.

II.

In *Gonsewski*, our Supreme Court recognized the principle that "a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors." *Id.* at *3 (footnote omitted). Decisions regarding the nature and amount of spousal support hinge upon the unique facts of each case and require careful consideration of the factors found at Tenn. Code Ann. § 36-5-121(i).[9] *Oakes v. Oakes*, 235 S.W.3d 152, 160 (Tenn. Ct. App. 2007). Tenn. Code Ann. § 36-5-121(i) instructs the court to consider all relevant factors in determining whether spousal support is appropriate and in determining the nature, amount, length of term, and manner of payment, including the following:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

[9]As Supreme Court Justice Henry once observed, "Every tub must stand on its own bottom." *Farris v. State*, 535 S.W.2d 608, 622 (Tenn. 1976). Each case is governed by its own facts and the application of the law to those facts. *Id.*

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The single most important consideration for the court in awarding alimony is the need of the disadvantaged spouse seeking support, followed by the ability of the obligor spouse to pay support. *Bratton*, 136 S.W.3d at 470; *Oakes*, 235 S.W.3d at 160.

In the present case, in addition to an award of rehabilitative alimony, the trial court awarded Wife alimony in solido of $2,000 per month for 12 years. Pursuant to Tenn. Code Ann. § 36-5-121(h)(1), alimony in solido, or lump sum alimony, is "a form of long term support, the total amount of which is calculable on the date the decree is entered, but which is not designated as transitional alimony." The same subsection states that the purpose of alimony in solido is "to provide financial support to a spouse." Tenn. Code Ann. § 36-5-121(h)(1). Such an award is not modifiable (unless the parties agree otherwise) and is not terminable upon the death or remarriage of either party. Tenn. Code Ann. § 36-5-121(h)(2)-(3). Alimony in solido may be awarded "in lieu of or in addition to any other alimony award." Tenn. Code Ann. § 36-5-121(d)(5).

We now consider the statutory factors set forth at Tenn. Code Ann. 36-5-121(i). Factor 1 is the parties' relative earning capacity, obligations, needs, and financial resources. The trial court determined that Wife had the capacity to earn approximately $50,000 a year as an engineer and used this figure to impute a monthly income of $4,166.67 to her for purposes of child support. Husband was determined by the trial court to have a current gross income of $12,455.85 per month, which yields an annual income of $149,470.20. The court further found that Husband "has regularly received yearly bonuses, and his bonus for 2010 was $17,384.00 gross ($9,900.00 net)." For child support purposes, the court used a total monthly gross income of $13,904.52. Thus, Husband's total income was over three times the imputed earning capacity of Wife. While the court did not make specific findings regarding the parties' needs, each party presented a statement of expenses. Subtracting private school tuition fees (paid by Husband) and an overstatement of health insurance expenses from Wife's statement, we calculate Wife's monthly expenses to be approximately $3943.57; Husband claimed monthly expenses in the amount of $7,184.29 (which includes the children's private school tuition). Just looking at the numbers, we must conclude that Wife has need and Husband has the ability to pay.

Factor 2 is the parties' relative education and training and whether there is a need for further education to improve a party's earning capacity. Tenn. Code Ann. § 36-5-121(i)(2). Husband and Wife both have college degrees in civil engineering. Husband obtained a master's degree in civil engineering from Vanderbilt in 2008. Wife obtained a master's degree in civil engineering from the University of Tennessee in 1995 but at the time of the hearing had decided to pursue a position teaching high school math. The trial court found that "[i]t will require approximately three years for the Wife to obtain the education and certifications necessary to pursue a career as a teacher." The court's award of rehabilitative alimony for three years was intended to allow Wife to get the credentials to allow her to teach full time in the public school system. The court recognized that a career in teaching would not allow Wife to earn as much as working in engineering.

As to factors 3, 4, and 5, the parties were married for approximately sixteen years and were both age 40 and healthy at the time of the divorce. *See* Tenn. Code Ann. § 36-5-121(i)(3)-(5). Factor 6 is "[t]he extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage." Tenn. Code Ann.§ 36-5-121(i)(6). Under the terms of the permanent parenting plan adopted by the court, Wife is the primary residential parent of the two minor children, who were ages 8 and 12 at the time of the divorce. Because Husband moved to another state, he has regular parenting time during the school year only one weekend per month. One of the reasons stated by Wife for pursuing a teaching position was to allow her to be available to the children after school and on breaks. Wife also testified that she had not sought engineering positions in other cities because she wanted to maintain stability in the lives of

the children. Thus, although Wife will be working outside the home, there is evidence indicating that a school teaching position is preferable to an engineering position in another town because of the impact on the children.

Factors 7 and 8 concern the parties' separate assets and the division of marital property. Tenn. Code Ann. § 36-5-121(i)(7)-(8). Neither party has substantial separate assets. The parties agreed on the division of many of the marital assets, but they did not agree on the valuation of the assets; and the court had to make a determination as to the division of the bank accounts, retirement benefits, pension funds, and debts. Husband was ordered to be responsible for both of the credit cards, totalling about $29,000.00. One of the cards was in Husband's name only, and there was evidence that Husband had used the other card for expenses incurred as a result of an extramarital affair. Based upon both parties' valuations of the marital assets, the court divided the assets fairly evenly.[10]

Factor 9 is the parties' standard of living during their marriage. Tenn. Code Ann. § 36-5-121(i)(9). We will combine the discussion of this factor with factor 10--"the extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training and increased earning power of the other party." Tenn. Code Ann. § 36-5-121(i)(10). As summarized above, Tenn. Code Ann. § 36-5-121(c)(2) accords equal importance to the contributions of a spouse as homemaker or parent as it does to economic contributions. The statute goes on to state:

> [W]here one (1) spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(c)(2). In this regard, the trial court specifically found that, "[b]y mutual agreement of the parties, [Wife] stayed at home to care for the children."[11] The trial court also made the following relevant findings:

---

[10]With Wife's numbers, she received about $167,000.00 and Husband received about $165,000.00. According to Husband's numbers, Wife received about $178,000.00 and he received about $150,000.00.

[11]While the precedential value of *Crabtree* must be considered in light of later statutory revisions and caselaw, we note that, in *Crabtree*, the wife continued to work parttime in her chosen career throughout the marriage. *See Crabtree*, 16 S.W.3d at 360. In *Gonsewski*, too, the wife worked outside the home throughout the marriage. *Gonsewski*, 2011 WL 4116654, at *1.

While the Husband's career has steadily advanced, for the last twelve years [Wife] has been out of the job market. It will require some period of time for the Wife to develop her career to the point that she can afford a reasonable comparable lifestyle.

From these findings, it appears that the trial court felt Wife was in need of support in light of her contribution to the marriage by dropping out of the work force to care for the parties' children and her resulting economic disadvantage. The court specifically recognized that, without additional support, she would not be able to have a standard of living reasonably comparable to that of Husband.

Factor 11 is the relative fault of the parties. There is no doubt in this case that Husband was at fault in the divorce since the court awarded Wife a divorce on the basis of adultery and inappropriate marital conduct.

Tenn. Code Ann. § 36-5-121(i) provides that the court may take into account other factors, including tax consequences, as necessary "to consider the equities between the parties." Husband argues that the court failed to consider the tax consequences of alimony in solido. Because alimony in solido is not terminable upon death or remarriage, Husband asserts, it does not meet the criteria for being deductible to Husband.

Husband takes the position that the trial court's award of alimony in solido is not consistent with the statutory factors and the preference for rehabilitative, rather than long-term, alimony. He further argues that the trial court's award of alimony in solido is a punitive measure for Husband's fault in the failure of the marriage.

In reviewing the statutory factors and the trial court's findings, we must bear in mind that our review is limited to the abuse of discretion standard. *Gonsewski*, 2011 WL 4542255, at *3. Alimony determinations are inherently factual in nature and require the trial court to balance many factors. *Id.* Our role is only "to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Id.* We are to presume the correctness of the trial court's decision and review the evidence "in the light most favorable to the decision." *Id.* at *4. An abuse of discretion review must reflect "an awareness that the decision being reviewed involved a choice among several acceptable alternatives." *Id.* at *3. Thus, the fact that the reviewing court would not have made the same ruling is not relevant as long as the trial court's decision falls within the range of acceptable options.

With these principles in mind, we cannot find an abuse of discretion in the trial court's alimony award. The court considered the statutory factors and made specific findings with

regard to the factors it deemed salient. Reviewing the evidence in the light most favorable to the trial court's decision, we see no indication that the trial court applied an erroneous standard or reached a patently unreasonable result.

CONCLUSION

We affirm the decision of the trial court and assess the costs of this appeal, for which execution may issue if necessary, against the appellant, Timothy Stewart Gorman.


_____
ANDY D. BENNETT, JUDGE