**Harvey Joe OAKES**

v.

**Rhonda Gail OAKES.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

Nov. 8, 2006 Session.

March 26, 2007.

Permission to Appeal Denied by
Supreme Court Aug. 13, 2007.

Jennifer Austin Mitchell, Dunlap, Tennessee, for the appellant, Harvey Joe Oakes.

Cindy A. Howell, Sparta, Tennessee, for the appellee, Rhonda Gail Oakes.

## OPINION

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

This is a divorce case. Harvey Joe Oakes ("Husband") appeals, arguing that the trial court erred (1) in awarding Rhonda Gail Oakes ("Wife") one-half of his military disability benefits; (2) in classifying a particular vehicle as marital property; (3) by failing to make an equitable division of the parties' marital estate; (4) in awarding Wife $400 per month in rehabilitative alimony for 36 months; and (5) in awarding Wife attorney's fees. Wife contends that her alimony should be *in futuro* rather than rehabilitative. The trial court's award to Wife of one-half of Husband's disability benefits and its award of attorney's fees are reversed. The court's classification of the subject vehicle and the court's division of the marital estate is affirmed. The award of alimony is modified, and, as such, is affirmed.

## I.

The parties were married in 1974. They are currently in their mid–50s and have two adult children. Husband served in the United States military prior to the parties' marriage. In 1970, he received a medical discharge and began receiving disability compensation from the Veteran's Administration. The monthly VA payments were initially less than $100. Over the years, the payments increased, and, at the time of the hearing below, Husband was receiving $2,553 each month.

Husband obtained his GED. He held several jobs during the parties' marriage. In 1984, he began working as a custodian for the United States Postal Service. He later became a building equipment mechanic for the Postal Service. Husband retired in 1998. Wife also worked several jobs during the marriage, but she did not work during the last few years of the parties' marriage because, according to her, she was responsible for providing care and transportation for Husband. Wife also states that she provided care for Husband's mother.

The parties separated in June 2004. At that time, Wife withdrew $39,700 of the parties' funds on deposit. In July 2004, Husband filed for divorce, citing the grounds of inappropriate marital conduct and irreconcilable differences. Wife filed an answer and counterclaim, citing the same grounds. The parties later stipulated to the existence of grounds for divorce.

Following the parties' separation, Wife obtained a license to be a certified nursing assistant. She subsequently worked at a hospital, earning $6.75 per hour, and later at a nursing home facility, earning $9.50 per hour. Two months prior to the parties' divorce hearing, Wife quit her job at the nursing home facility. She testified that she quit because the job was too difficult and because she was having health problems. Specifically, Wife claimed she was suffering from asthma, emphysema, and hernias.

Husband has monthly revenue of $4,258.44. In addition to the previously-mentioned $2,553 per month from the VA, Husband receives monthly Social Security disability benefits of $1,477 and a monthly pension from the Postal Service of $228.44.

A plenary hearing was held in October 2005. The court subsequently filed a

memorandum opinion, in which it made the following findings and reached the following conclusions:

Wife is a CNA, and was gainfully employed earning $9.50 hourly until the date for this hearing was set when she quit work in the mistaken belief that unemployment would enhance her entitlement to alimony. While she professed to be suffering from various ailments, she was not convincing and presented no medical proof of any of these alleged ailments. Her credibility generally suffers, but is reduced to a weakened state only. The foibles of a contested divorce, which is a traumatic experience for any person with sensibilities, should be taken into account.

\* \* \*

These parties have been married for thirty (30) years, and all of their assets qualify as marital property, except the real estate inherited by Husband which clearly is his separate property. The fact that it was inherited during the marriage does not change its character to marital property. Wife is under a misapprehension as to this principle. Accordingly, the marital estate will be divided, not necessarily equally, but equitably.

Wife had been living in the jointly-owned residence since their separation in June 2004. Husband has been living with his mother.

Wife is awarded the marital residence, having a value of $92,000.00. (It is encumbered by a $6,000.00 mortgage paid monthly by Husband's disability insurance carrier, at no cost to him, and this obligation will continue until the debt is discharged.)

Wife is awarded the 2003 Mitsubishi automobile, which has a value of $10,000.00. It is encumbered by a lien in the amount of $8,148.00. Husband should pay one-half of this amount (whatever it is). He may do so monthly, or in a lump sum.

Wife is awarded the household goods and furnishings now in the residence. Husband is awarded the goods and furnishing he removed from the residence, together with a 9mm handgun. These values are $6,486.00 and $1,055.00 respectively. Wife is awarded the yard equipment presently located at the residence, having a value of $2,604.00. The yard equipment and tools currently in the possession of Husband of the value of $4,150.00 are awarded to him.

The real estate, other than the residence, is Husband's separate property. As stated, it is not marital property subject to distribution.

The 1987 pick-up truck and the 2000 [F–150] pick-up truck are awarded to Husband. These have a value of $11,300.00.

The 401(K) of the asserted value of $100,000.00 will be distributed 75 percent to Husband, and 25 percent to Wife.

Wife took $39,000.00 from accounts when the separation occurred. This amount will be debited $32,000.00 for her support during the separation. The balance of $7,000.00 is distributed to [W]ife.

Husband receives $2,553.00 monthly from the Veterans Administration for disability compensation. (This is not a retirement benefit; his military service spanned nineteen (19) months and he was discharged for chronic hypertension.) As the Court understands, this amount is tax-free. Wife is awarded one-half of this amount, as and for a distribution of marital assets. It should not be construed as alimony. This equal division will remain constant, whatever the amount. If the VA benefits are

terminated, *Husband[']s* obligation here-under also ends.

*Husband* also receives $1,447.00 monthly from the Social Security Administration for total disability. Wife is not awarded any amount from this benefit, for this reason: She is a CNA and can be gainfully employed, as heretofore stated.

*Husband* has a small pension from the U.S. Postal Service of $228.44 monthly from which *Wife* is awarded nothing. In sum, *Wife* receives: [the marital] residence, $92,000; the Mitsubishi net $1,852.00; household and yard goods, $9,000.00; 401(K) plan, $25,000.00; and, the balance, $7,000.00, of the funds she took upon separation, and currently in her possession. These allocations total $134,942.00.

*Husband* receives the household goods and yard equipment of the value of $5,205.00; the trucks, having a value of $11,300.00; and, the 401(K), $75,000.00. These allocations total $91,505.00[.]

*Wife* is awarded $400.00 per month, for thirty-six (36) months as and for rehabilitative alimony.... She will also receive one-half of *Husband's* military disability monthly compensation, (currently $1,276.00) and can earn at least $1,200.00 monthly net. Her only indebtedness is the Mitsubishi note, and she will own the residence and furnishings debt-free.

*Husband* will have one-half of his military monthly compensation (currently $1,276.00) tax free, his social security disability compensation of $1,447.00 monthly, and his post office retirement of $228.00 monthly, aggregating $2,951.00. He will have no residence, but lives with his mother presumably at no expense to himself. Little evidence was offered concerning his health or his ability to work, but the circumstances indicate that he is not capable of earning an income.

[Wife's Attorney]'s fee is determined to be $3000.00, of which 1500.00 is alimony *in solido* payable by *Husband,* and the balance of 1500.00 will be paid by *Wife.*

\* \* \*

(Italics in original). In February 2006, the trial court filed its final judgment, awarding the parties an absolute divorce and incorporating the foregoing findings and conclusions. Husband then filed a notice of appeal.

## II.

Because this is a non-jury case, our review is *de novo* upon the record of the proceedings below with a presumption of correctness as to the trial court's factual findings, a presumption we must honor unless the evidence preponderates against those findings. Tenn. R.App. P. 13(d). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993).

## III.

Husband raises the following issues on appeal:

1. Whether the trial court erred in awarding Wife one-half of his military disability benefits.

2. Whether the trial court erred in classifying the 2000 F–150 pickup truck as marital property.

3. Whether the trial court failed to make an equitable division of the parties' marital estate.

4. Whether the trial court erred in awarding Wife alimony.

5. Whether the trial court erred in awarding Wife attorney's fees.

Wife asserts that the trial court erred in awarding her rehabilitative alimony, rather

than alimony *in futuro*. We will address each issue in turn.

## IV.

Husband first contends that the trial court erred, as a matter of law, in awarding Wife one-half of his military disability benefits. In light of the authority discussed below, Wife concedes this issue, agreeing that the trial court erred in treating Husband's VA disability benefits as marital property.

 The law pertaining to a state court's authority to divide a spouse's military disability benefits is succinctly set forth in the cases of *Hillyer v. Hillyer*, 59 S.W.3d 118 (Tenn.Ct.App.2001) and *Smith v. Smith*, No. M1998–00937–COA–R3–CV, 2001 WL 242562 (Tenn. Ct.App. M.S., filed March 13, 2001). Both cases include the following language:

> Federal law authorizes state courts to treat the "disposable retired pay [of a service member] ... either as property solely of the member or as property of the member and his spouse," 10 U.S.C. § 1408(c)(1), thus allowing division of such retirement benefits as marital property upon the dissolution of a marriage. However, "disposable retired pay" does not include amounts deducted from that pay "as a result of a waiver of retired pay ... in order to receive compensation under ... title 38 [disability] pay." 10 U.S.C. § 1408(a)(4)(B). In order to receive disability pay, a former

service member must waive a corresponding portion of his or her retirement pay. 38 U.S.C. § 5305. Disability pay is exempt from federal, state and local taxation, and this exemption provides an incentive for a former service member to make the waiver which otherwise would have no economic impact. *Mansell v. Mansell*, 490 U.S. 581, 583–84, 109 S.Ct. 2023, 2026, 104 L.Ed.2d 675 (1989).

> At the time the case before us was argued, *the law was settled that state courts cannot treat disability pay as marital property subject to division upon divorce. Mansell*, 490 U.S. at 594–95, 109 S.Ct. at 2032 (state court could not treat a portion of husband's total retirement pay which was disability pay as marital property in its division of property at the time of divorce).

*Hillyer*, 59 S.W.3d at 119; *Smith*, 2001 WL 242562, at *1 (footnotes omitted) (emphasis added). Though the facts in the *Hillyer* and *Smith* cases are distinguishable from the facts in the instant case,[1] the rule of law quoted above is a complete answer to the issue of whether Husband's military disability benefits are subject to equitable division. "[S]tate courts cannot treat disability pay as marital property subject to division upon divorce." *Id.* The trial court erred in awarding Wife one-half of Husband's monthly military disability pay "as and for a distribution of marital

---

1. Unlike the instant case, *Hillyer* and *Smith* both involved a situation where the husband—the military spouse—opted to waive his military retirement pay for military disability pay after the filing of a final divorce judgment in which the former wife received a percentage of the husband's military retirement pay in the court's division of the parties' marital property. 59 S.W.3d at 119; 2001 WL 242562, at *1. Thus, the specific issue in *Hillyer* and *Smith* was "whether a post-di-

vorce waiver of [military] retirement pay in exchange for a corresponding amount of [military] disability pay could reduce a former spouse's previous award, as marital property, of a portion of the military retirement pay." *Id.* In both cases, the Court held that the husband's post-divorce waiver of the retirement pay was an impermissible modification of the trial court's divorce decree under which the former wife had obtained a vested interest in the husband's military retirement

assets." Accordingly, we reverse this award.

## V.

Husband next contends that the trial court erred (1) in classifying the 2000 F–150 pickup truck as marital property and (2) assigning the truck's value to Husband in the court's division of the marital estate. He argues that the truck is owned by the parties' daughter, not the parties.

In an action for divorce, only marital property is equitably divided between the parties. *See* Tenn.Code Ann. § 36–4–121(a)(1) (2005). Generally speaking, property that is acquired during the marriage by either or both spouses and still owned at the time of the divorce is classified as marital property subject to equitable division. *See id.* at (b)(1).

There is a paucity of evidence on the issue of the classification of the pickup truck. In fact, the only evidence in the record is a document introduced into evidence by Wife. The document—a listing of assets and other matters—reflects the truck as a "marital" asset. We recognize that Husband's counsel, in response to a question from the court, stated that the truck was titled in the name of the parties' daughter. However, there was no testimony or other evidence to this effect and it is clear that argument and statements of counsel during the course of a hearing are not evidence. *State v. Roberts,* 755 S.W.2d 833, 836 (Tenn.Crim.App.1988). While, as previously noted, there is little evidence regarding the subject under discussion, there is some evidence—the exhibit moved into evidence at the request of Wife—that the truck is a marital asset. Certainly, the

record before us does not permit us to say that the evidence preponderates against the trial court's classification and treatment of the truck as a marital asset.

## VI.

Husband further questions whether the trial court's division of the parties' marital assets was equitable. The court allocated to Husband $91,505 in marital property, an allotment which includes household goods and yard equipment, two pickup trucks, and 75% of his 401(k). Wife was given $134,942 in marital assets. The division to Wife includes the marital residence, the net value of a Mitsubishi vehicle, household goods and yard equipment, 25% of Husband's 401(k), and the "balance" of the $39,700 she took upon the parties' separation. Husband specifically argues that the trial court erred in awarding Wife both the marital residence and 25% of his 401(k).

In an action for divorce, the trial court is charged with the task of making an equitable division of the marital property without regard to fault. Tenn.Code Ann. § 36–4–121(a)(1). The trial court is under no obligation to divide the parties' marital estate equally, but rather equitably, for "[t]he division of the estate is not rendered inequitable simply because it is not mathematically equal, or because each party did not receive a share of every item of marital property." *King v. King,* 986 S.W.2d 216, 219 (Tenn.Ct.App.1998) (citations omitted). In dividing marital property, courts are required to allocate interests in a manner consistent with the relevant statutory factors set forth in Tenn.Code Ann. § 36–4–121(c).[2] *Brown v. Brown,*

---

pay. *Hillyer,* 59 S.W.3d at 123–24; *Smith,* 2001 WL 242562, at *4–5.

**2.** Tenn.Code Ann. § 36–4–121(c) provides as follows:

In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

913 S.W.2d 163, 168 (Tenn.Ct.App.1994). The trial court has broad discretion in dividing marital property, and, accordingly, its judgment should be given great weight on appeal and presumed proper unless the evidence preponderates otherwise. *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn.Ct.App.1988).

Our analysis of this case in the context of the most relevant statutory factors set forth in Tenn.Code Ann. § 36–4–121(c)—the duration of the marriage, the earning capacity of each party, the contributions of each party, and the separate property of each party—persuades us that the trial court did not abuse its discretion when it divided the parties' net marital assets. The parties were married for 30 years. *See* Tenn.Code Ann. § 36–4–121(c)(1). The trial court found that Wife was capable of earning at least $1,200 a month as a nurse assistant. *See id.* at (c)(2). Husband, on the other hand, receives a total of $4,258.44 a month. *See id.* Both parties contributed to the marriage as wage earners. *See id.* at (c)(5). In addition, Wife testified that she contributed approximately $48,636 in separate funds to the marriage. *See id.* Wife also testified that she was unable to work during the last few years of the parties' marriage because she was responsible for providing care and transportation for Husband and for providing care for Husband's elderly mother. *See id.* Husband inherited the real property on which he and his mother currently reside. This property, which the trial court classified as Husband's separate property and awarded to him, is valued at $102,000. *See id.* at (c)(6). Wife has no separate property. *See id.*

Given these facts, we cannot say that the trial court's division of the parties' marital property—a division which favored Wife by approximately $43,000—is unsupported by the preponderance of the evidence. Certainly, the record does not reflect an abuse of discretion on the part of the trial court. We accordingly find no error in the court's division.

## VII.

Husband argues that the trial court erred in awarding Wife alimony. Wife argues that the trial court erred in awarding her rehabilitative alimony, rather than alimony *in futuro*.

■ Tennessee law provides four different types of alimony that may be appropriate in combination or alone: "rehabilitative alimony, alimony in futuro, also known as periodic alimony, transitional alimony, or alimony in solido, also known as lump sum

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

alimony." Tenn.Code Ann. § 36–5–121(d)(1) (2005). There is a statutory bias in favor of rehabilitative alimony. *Id.* at (d)(2); *Robertson v. Robertson,* 76 S.W.3d 337, 340 (Tenn.2002); *Crabtree v. Crabtree,* 16 S.W.3d 356, 358 (Tenn.2000). Under the statute, rehabilitation

> means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn.Code Ann. § 36–5–121(d)(2), (e)(1).

■■■■ The trial court has broad discretion in fashioning an award of spousal support. *Aaron v. Aaron,* 909 S.W.2d 408, 410 (Tenn.1995) (citation omitted); *Anderton v. Anderton,* 988 S.W.2d 675, 682 (Tenn.Ct.App.1998). Decisions regarding the propriety, nature, and amount of spousal support hinge upon the unique facts of each case and require a careful balancing of the relevant factors found at Tenn.Code Ann. § 36–5–121(i)(1)–(12).[3] *Anderton,* 988 S.W.2d at 683 (citing the predecessor to § 36–5–121(i)). The "real need of the [disadvantaged] spouse seeking the support is the single most important factor .... [and next] the courts most often consider the ability of the obligor spouse to provide support." *Aaron,* 909 S.W.2d at 410 (citation omitted).

Husband asserts that he should not be required to pay Wife alimony because Wife has more education and can earn a sufficient living as a nurse assistant. *See* Tenn.Code Ann. § 36–5–121(i)(1), (2). Husband states that he, on the other hand, is unable to work and thus only receives a "small" retirement pension and disability benefits. He argues that, contrary to Wife's testimony at trial, she is in better physical health than Husband. *See id.* at (i)(5). He further stresses the amount of

---

3. Tenn.Code Ann. § 36–5–121(i) provides the following:

In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
(3) The duration of the marriage;
(4) The age and mental condition of each party;
(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
(7) The separate assets of each party, both real and personal, tangible and intangible;
(8) The provisions made with regard to the marital property, as defined in § 36–4–121;
(9) The standard of living of the parties established during the marriage;
(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

property that Wife received in the trial court's division of the parties' marital estate. *See id.* at (i)(8). We are not persuaded by Husband's argument.

The parties were married for 30 years. *See id.* at (i)(3). They are both in their mid–50s. *See id.* at (i)(4). Husband has separate property valued at $102,000. *See id.* at (i)(7). Wife has no separate property. *See id.* Both Husband and Wife made monetary contributions to the marriage and Wife invested a significant amount of separate property in the marriage. *See id.* at (i)(10). Wife testified that she also provided transportation for Husband and care for Husband and his mother. *See id.*

The trial court found that Wife can earn at least $1,200 a month working as a nursing assistant. *See id.* at (i)(1). In fashioning its alimony award, the trial court took into account Wife's earning capacity and the fact that Wife would be receiving one-half of Husband's $2,553 military disability benefits each month. The trial court thus proceeded under the assumption that Wife's monthly income would be approximately $2,876. This would have left Husband with a monthly income of $2,981.44, *i.e.,* one-half of his military disability pay, his Social Security benefits, and his Postal Service pension. However, as discussed in section IV of this opinion, the trial court erred in treating Husband's military disability pay as marital property and awarding Wife a portion of that pay in its division of the marital estate. We have reversed that award. Therefore, as presently constituted, Husband is left with monthly revenue of $4,258.44, while Wife has imputed income of $1,200 and $400 per month in alimony for 36 months. Husband's income and expense statement shows that his monthly expenses total $1,896.24. Assuming this is correct, this leaves Husband with a net income, after expenses, of $2,362.20.[4] Wife's statement reflects monthly expenses of $3,460.

Based upon the relevant statutory factors, we find it appropriate to change Wife's $400 per month rehabilitative alimony award for 36 months to an award of alimony *in futuro* in the amount of $1,200 per month. The evidence preponderates against a finding that Wife can be rehabilitated as that term is defined in Tenn.Code Ann. § 36–5–121(d)(2), (e)(1). In fact there is *no* evidence that Wife, "with reasonable effort," can be rehabilitated. When all of the relevant factors are considered, and considering the statutory definition of rehabilitation, the evidence preponderates in favor of an *in futuro* award.

Our decision to award Wife alimony *in futuro* of $1,200 per month will give her monthly revenue of some $2,400 while Husband will have monthly revenue of approximately $3,058. As structured by us, the award to Wife of alimony *in futuro* leaves Husband's military disability undisturbed. *See Hillyer,* 59 S.W.3d at 119; *Smith,* 2001 WL 242562, at *1. However, there is no law, to our knowledge, which prohibits state courts from considering a spouse's military disability pay in determining the non-military spouse's alimony award. *See Gragg v. Gragg,* 12 S.W.3d 412, 418–19 (Tenn.2000) (stating, in a discussion of the court's treatment of *non-military* disability benefits, that "disability benefits which replace future income should not be classified as marital property . . . . disability benefits should be considered when determining alimony and child support obligations.").

## VIII.

Finally, we address Husband's contention that the trial court erred in awarding

---

4. This is without an alimony obligation being considered.

Wife attorney's fees of $1,500. The court made the award as alimony *in solido.*

■ This Court summarized the law regarding the recovery of attorney's fees as alimony in the case of *Eldridge v. Eldridge,* 137 S.W.3d 1 (Tenn.Ct.App.2002):

> In a divorce case, an award of attorney's fees is treated as an award of alimony *in solido. Kinard v. Kinard,* 986 S.W.2d 220, 235 (Tenn.Ct.App.1998); *Herrera v. Herrera,* 944 S.W.2d 379, 390 (Tenn.Ct. App.1996). Thus, when determining whether to award attorney's fees, the trial court is required to consider the same factors used when considering a request for alimony. *Kincaid v. Kincaid,* 912 S.W.2d 140, 144 (Tenn.Ct.App. 1995). As with alimony, need is the critical factor to be considered by the court when deciding whether to award attorney's fees. *Herrera,* 944 S.W.2d at 390. An award of attorney's fees is proper when one spouse is disadvantaged and does not have sufficient resources with which to pay attorney's fees. *Id.*

*Eldridge* 137 S.W.3d at 24–25. As observed by the Supreme Court,

> [t]he award of attorney's fees "is conditioned upon a lack of resources to prosecute or defend a suit in good faith.... If a spouse does not have separate property of her own which is adequate to defray the expenses of the suit, certainly she should not be denied access to the courts because she is unable to procure counsel."

*Langschmidt v. Langschmidt,* 81 S.W.3d 741, 751 (Tenn.2002) (citing *Fox v. Fox,* 657 S.W.2d 747, 749 (Tenn.1983)). The question of whether to award attorney's fees is within the wide discretion of the trial court, and an appellate court is not to disturb the trial court's award unless there is clear evidence that the trial court has abused its discretion. *Id.* (citing *Fox,* 657 S.W.2d at 749; *Aaron,* 909 S.W.2d at 411).

■ Husband asserts that the trial court's award of attorney's fees is erroneous because Wife had, in his words, "more than sufficient" funds to pay her own attorney's fees. Wife withdrew $39,700 upon the parties' separation. She testified that, at the time of trial, she still had approximately $26,000. The trial court allocated Wife $32,000 of the money she withdrew for her support during the separation. The court then allocated the balance, *i.e.,* approximately $7,000, to Wife as part of its equitable division of the parties' marital property. Wife received other substantial assets as a result of the trial court's division of the net marital estate. Given this evidence, we conclude that Wife has the financial resources to pay the fees of her counsel. Accordingly, we find that the evidence preponderates against the trial court's judgment that Husband should pay $1,500 to Wife as an award of fees.

## IX.

The judgment of the trial court awarding Wife one-half of Husband's military disability benefits is reversed. The judgment of the trial court awarding Wife attorney's fees in the amount of $1,500 is also reversed. The portion of the judgment awarding Wife alimony is modified, and, as such, is affirmed. The remainder of the trial court's judgment is affirmed. This case is remanded to the trial court for enforcement of the trial court's judgment, as modified, and for the collection of costs assessed below. Exercising our discretion, we tax the costs on appeal one-half to the appellant, Harvey Joe Oakes, and one-half to the appellee, Rhonda Gail Oakes.