# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 11, 2011 Session

## KIMBERLY ANNE CHAVEZ v. JAMES ALBERT CHAVEZ, JR.

**Appeal from the Circuit Court for Montgomery County**
**No. MCCCCVDV081015      John H. Gasaway III, Judge**

**No. M2010-02123-COA-R3-CV - Filed January 5, 2012**

Wife sought a divorce and Husband counterclaimed for a divorce. The trial court granted the divorce to both parties. Wife was designated the primary residential parent and was awarded transitional alimony and alimony in solido. Husband appeals. Finding no abuse of discretion, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, James Albert Chavez, Jr.

David Scott Parsley and Joshua G. Strickland, Nashville, Tennessee, for the appellee, Kimberly Anne Chavez.

## OPINION

James Albert Chavez, Jr. ("Husband") and Kimberly Ann Chavez ("Wife") married on June 2, 1996. They had two children, a daughter and a son. Wife filed for divorce in September 2008, and Husband counterclaimed for divorce. Both alleged irreconcilable differences and inappropriate marital conduct. In June 2010, Wife amended her complaint to allege adultery. Husband admitted being guilty of adultery.

The case was tried over two days in June and July 2010. Finding that Husband "engaged in inappropriate marital conduct by developing and fostering a relationship with another woman," and that Wife "engaged in inappropriate marital conduct by engaging in alcohol and drug abuse," the trial court granted the divorce to both parties. Wife was designated as the primary residential parent. The marital home was ordered sold with the

proceeds going to Wife.[1]  The parties were awarded their separate retirement accounts, and the marital property and debts were divided.  The court ordered Husband to pay transitional alimony of $1,800 per month for 48 months and alimony in solido of $90,000 over six years.  Wife was also awarded $20,000 in attorney fees.  Husband was ordered to pay $1,653 per month in child support.  Husband appealed the designation of Wife as primary residential parent, the allocation of parenting time and the alimony awards.

STANDARD OF REVIEW

The trial court's findings of fact are reviewed de novo by this court with a presumption of correctness.  Tenn. R. App. P. 13(d).  Matters of child custody and visitation generally are within the broad discretion of the trial court.  *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001).  Similarly, "trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award."  *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).  Consequently, the abuse of discretion standard is applied to such decisions.  *Id*.  "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice."  *Id*.

ANALYSIS

Husband argues that he should have been designated the primary residential parent and that his parenting time should have been 50-50 with Wife.  The trial court went to great lengths to list what considerations went into its ruling:

> Pursuant to the previous order of this Court, the parties exercised parenting time with their children on a week-on-week-off basis, for the past year.  The Court heard evidence from both parties as to why each thinks that it is appropriate or not appropriate to continue this arrangement.  The Court has also taken into consideration the testimony of Marilyn Drake Chavez [the parties' daughter] in reaching its conclusion as to what is in the best interest of the children.  The Court is mandated under T. C. A. § 36-6-106 to consider a number of factors in determining what is in the best interest of each child.  The Court has considered the love, affection, and emotional ties existing between the parents and their children; the disposition of each parent to

---

[1] The testimony on the equity in the home conflicted.  Since Husband argued that the home might be sold for a loss, the court ordered that any loss on the sale of the home would be suffered equally by the parties.

provide each child with food, clothing, medical care, education and other necessary care; and the degree to which a parent has been the primary care giver. The Court has considered the importance of continuity in the children's lives and the length of time they have lived in a stable and satisfactory environment. The Court has considered the stability of the family unit of the parents, the mental and physical health of the parents, the home, school and community records of the children to the extent it has been made known to the Court, and the reasonable preference of Marilyn Drake who is in excess of 12 years of age. The Court finds there is no physical or emotional abuse to either of the children. Further, the Court has considered the character and behavior of Stephanie Field, who is a person who frequents the home of Husband and vice versa, to the extent that she has or will in the near future, and likely for some time, have interactions with each child. The Court has considered each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent/child relationship between the child and the parent consistent with the best interest of the child. The Court has considered the history of the parenting time that each of the parents have had with the children in the last year or so pursuant to the Court's temporary order.

There is little doubt that the parents were fairly equal. The factors that tipped the scales in Wife's favor, as far as being the primary residential parent and having more time with the children, were Husband's job and Marilyn's testimony. Husband is the president and CEO of the Clarksville-Montgomery County Economic Development Council. The travel demands arising from his job are considerable. The trial court found that "he has, based on the testimony, engaged in many trips to many places and it has adversely affected his ability to spend the parenting time that he was awarded by the Court on a timely basis." While Wife has a job that also requires travel, the trial court found that the time Wife "has missed with the children has been minimal compared to the time Husband has missed with the children."

Furthermore, the trial court found:

that it's not in their [the children's] best interest to go a week and a week. It is too inconvenient, particularly for Mary [Marilyn] Drake, because she is 13 and involved in dance . . . . This way the parenting time is not as disruptive as it has been and that's the Court's goal, and finds that it's in the best interest of each child.

I have thought long and hard about whether to try to structure some way for Mr. Chavez to make up days that he misses because of the demands of his employment, and the Court believes that it is simply too difficult, if not impossible to do that.

We have reviewed the record and find that the trial court's findings are supported by the preponderance of the evidence. The trial court's decisions regarding who would be the primary residential parent and parenting time are not an abuse of discretion. We, therefore, affirm the trial court's decisions on these matters.

Husband challenges the trial court's award of transitional alimony of $1,800 per month for 48 months. "Transitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of divorce . . . ." Tenn. Code Ann. § 36-5-121(g)(1). The trial court expressly found that Wife did not need rehabilitative alimony.[2] This finding indicates that the trial court determined she already possessed the necessary education or training[3] to achieve the appropriate standard of living. However, by finding that she was "economically disadvantaged" and in need of "some assistance to adjust to the economic consequences of this divorce," the trial court concluded that she could not remain in Clarksville and achieve the desired standard of living, at least not right away.[4]

Recently, our Supreme Court has reiterated that "two persons living separately incur more expenses than two persons living together. Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle once the proceedings are concluded." *Gonsewski v. Gonsewski,* 350 S.W.3d at 113 (quoting *Kinard v. Kinard,* 986 S.W.2d 220, 234 (Tenn. Ct. App.1998)). We must also be mindful of the legislature's determination that:

---

[2]According to Tenn. Code Ann. § 36-5-121(e)(1):

[t]o be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

[3]The trial court observed that Wife is a college graduate with a marketing degree and that she "is as talented as I've seen in a while. She is well educated, she is articulate, she is smart, and she has a work history that puts her in administrative roles."

[4]The trial court noted, "she is not in Atlanta; she is in Clarksville."

-4-

where one (1) spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(c)(2). It is clear from the language and context of Tenn. Code Ann. § 36-5-121(c) & (d) that the economic disadvantage that triggers a support obligation is a disadvantage relative to the other spouse.

Tenn. Code Ann. § 36-5-121(i) instructs the court to consider all relevant factors in determining whether spousal support is appropriate and in determining the nature, amount, length of term, and manner of payment, including the following:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The single most important consideration for the court in awarding alimony is the need of the disadvantaged spouse seeking support, followed by the ability of the obligor spouse to pay support. *Oakes v. Oakes,* 235 S.W.3d 152, 160 (Tenn. Ct. App. 2007).

Husband makes over four times the income of Wife. The economic disadvantage is undeniable.[5] While it may not be possible for her to maintain her pre-divorce lifestyle, we are instructed by the legislature to order a division of assets and/or a level of support that provides Wife with a standard of living after the divorce that is "reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse." Tenn. Code Ann. § 36-5-121(c)(2). In light of the evidence in the record, the trial court's findings and the statutory factors and requirements, we cannot say that the trial court abused its discretion in ordering the transitional alimony.

As alimony in solido, the trial court ordered Husband to pay Wife $90,000 in $15,000 installments on August 1 of each year from 2011 through 2016, $20,000 of Wife's attorney fees within 120 days, and $4,000 for Wife's private investigator fees within 120 days. Husband's basic argument against these awards is that they are excessive and unnecessary. Again, in light of the evidence in the record, the trial court's findings, including the relative economic disadvantage of Wife, and the statutory factors and requirements, we cannot say that the trial court abused its discretion in ordering these amounts of alimony in solido.

---

[5]It is also clear that Wife suffered this "economic detriment for the benefit of the marriage," Tenn. Code Ann. § 36-5-121(c)(2), since she testified that she gave up a good job in Georgia "[s]o that my husband could put his career first and move here for a better life for our family."

Wife suggests that she should have received more alimony. We respectfully decline to so order and find that the trial court did not abuse its discretion in not ordering more support. Furthermore, we decline to award Wife attorney fees for this appeal.

Costs of appeal are assessed against Husband for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE