IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 8, 2013 Session

## BARBARA ANN HERNANDEZ v. JOSÉ EMMANUEL HERNANDEZ

**Appeal from the Chancery Court for Hamblen County**
**No. 2010-420          Thomas R. Frierson, II, Chancellor**

_____

**No. E2012-02056-COA-R3-CV-FILED-SEPTEMBER 27, 2013**

_____

The issues in this divorce case are whether the trial court correctly ordered husband to pay wife $600 per month in transitional alimony for 36 months, child support in the amount of $253 per month, and $4,000 of the wife's attorney's fees, the latter as alimony in solido. At the time of trial, husband had been unemployed and actively seeking work for about one year. The trial court found that his income was zero. Wife did not argue that husband was voluntarily unemployed or underemployed, and the trial court made no such findings. The proof at trial establishes that many of the statutory factors supporting an award of alimony in futuro – including the need of the wife, duration of the marriage, *i.e.*, 20 years, the parties' relative earning capacities, wife's contributions to the marriage as homemaker and parent, and wife's health – were demonstrated. Husband's current ability to pay, however, is quite limited because of his involuntary unemployment and zero income. Consequently, we modify the transitional alimony award to $50 per month, but designate it as alimony in futuro. The difference in husband's income, *i.e.*, $1,191.66 per month, at the time his child support obligation was set and his income, *i.e.*, zero, at time of trial likely supports a finding that there is a significant variance between the current support order of $253 and the amount of the proposed presumptive modified support order. Accordingly, we vacate the trial court's order refusing to modify his child support obligation and remand for a recalculation of child support. We affirm the judgment of the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Modified in Part; Vacated in Part; and Affirmed in Part;**
**Case Remanded for Further Proceedings**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Carl R. Ogle, Jr. and Scott Justice, Jefferson City, Tennessee, for the appellant, José Emmanuel Hernandez.

Douglas R. Beier, Morristown, Tennessee, for the appellee, Barbara Ann Hayward, formerly Hernandez.

**OPINION**

I.

The parties, José Emmanuel Hernandez ("Husband") and Barbara Ann Hayward ("Wife"), formerly Hernandez, were married in 1991. Two daughters were born to their marriage – Roseanna Grace, age 19 at the time of trial, and Lynnea Joy, age 16. Wife filed for divorce on August 17, 2010. On July 27, 2011, husband's employer gave him a separation notice indicating his permanent layoff from work because the company was relocating to Florida and eliminating his position. Husband began looking for other work; he collected unemployment compensation in the meantime. The trial court entered an order on August 18, 2011, granting the parties a divorce on the ground of irreconcilable differences. It approved and incorporated their marital dissolution agreement ("MDA") and their agreed permanent parenting plan. In accordance with the parenting plan, the court ordered husband to pay child support in the amount of $253 per month. This amount reflected his income of $1,191.66 per month in unemployment benefits. The court reserved the remaining issues of alimony, extension of a prior order of protection against husband, and payments of property taxes and mortgage on the marital residence.

On October 28, 2011, wife filed a petition for contempt alleging, among other things, that husband had failed to pay child support as well as certain household expenses as required by the MDA and subsequent agreed pendente lite court orders. At a hearing on June 14, 2012, the court heard the testimony of the parties, their daughter Roseanna, and two other witnesses. The court later entered an order containing the following findings of fact and conclusions of law:

> [Husband] was most recently employed as an applications engineer with Mettler-Toledo Eagle from March 19, 2011 through July 29, 2011, [when he] received an employment separation notice indicating a permanent layoff.
>
> In connection with the Permanent Parenting Plan Order entered August 18, 2011, the attached Child Support Worksheets reflected that [husband] enjoyed a gross monthly income of $1,191.66. In connection with [husband's] previous employment . . . he enjoyed a gross annual income of

approximately $80,000.00. At the time of the trial in this cause, [husband] was receiving no income as his unemployment compensation benefits had expired in February 2012.

The evidence further preponderates in favor of a finding that [wife] suffers from several physical infirmities and conditions. She currently provides caregiver services to others and performs light housekeeping. Her gross monthly income is approximately $600.00.

*　　*　　*

The evidence preponderates in favor of a finding that for [wife], rehabilitation is not necessary, but as an economically disadvantaged spouse, she needs assistance to adjust to the economic consequences of this divorce. [Wife] is entitled to an award of transitional alimony at the rate of $600.00 per month for a period of 36 months. This award of transitional alimony shall terminate upon any remarriage by [wife]. The award may be modified by the Court upon petition of either party.

*　　*　　*

This court determines that [wife] cannot pay her attorney's fees without being forced to deplete the assets which she will use to support herself. While the transitional alimony award will assist [wife] in defraying her living expenses it will be insufficient to enable her to pay her attorney's fees. This Court, therefore, awards as alimony *in solido* a partial reimbursement of her attorney's fees.[1]

*　　*　　*

With reference to [husband's] request for a modification in the amount of his child support obligation, the evidence does not

---

[1]The trial court later entered an order awarding partial attorney's fees in the amount of $4,000 after wife's counsel filed an affidavit regarding his fees.

support a finding that a significant variance has been shown to exist with reference to the amount of child support ordered in the Permanent Parenting Plan. As such, [husband] shall continue to pay child support as directed by the existing Permanent Parenting Plan in the amount of $253.00 per month.

(Footnotes in original omitted; italics in original; footnote 1 added).

The trial court further granted wife a judgment against husband in the following amounts: $5,978.00 in child support arrearage; $1,301.26 for expenses husband was responsible for paying under the court's agreed *pendente lite* orders, such as reimbursement for wife's telephone bills; $2,958.47 for husband's share of property taxes and mortgage payments; $1,425.49 for his share of expenses for utilities in connection with the marital residence; and $1,728 for his share of the children's medical expenses under the parenting plan. The trial court held husband in contempt for his failure to pay these expenses, but did not order any punishment for his contempt. Husband has not appealed any of these rulings.

## II.

Husband timely filed a notice of appeal, raising the following issues:

1. Whether the trial court erred in ordering husband to pay $600 per month for 36 months in transitional alimony when his income was zero and there was no argument or finding that he was voluntarily unemployed.

2. Whether the trial court erred in ordering him to pay $4,000 of wife's attorney's fees as alimony in solido.

3. Whether the trial court erred in refusing to modify his child support obligation of $253 per month.

## III.

The Supreme Court has provided the principles that guide our review of a trial court's alimony decision:

For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining

matters of spousal support. This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award.

Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. This standard does not permit an appellate court to substitute its judgment for that of the trial court, but " 'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.' " Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (internal citations and footnote omitted).

Our review of this non-jury case is de novo upon the record of the proceedings below with a presumption of correctness as to the trial court's factual findings, a presumption we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). We review the trial court's conclusions of law de novo with no

presumption of correctness. ***Oakes v. Oakes***, 235 S.W.3d 152, 156 (Tenn. Ct. App. 2007).

IV.

A.

We first address the alimony award. Husband argues that the award of $600 per month transitional alimony for 36 months was too large in light of his inability to pay due to his involuntary unemployment. Wife argues that the trial court should have awarded her alimony in futuro in addition to transitional alimony. As the Supreme Court has recently observed:

> Tennessee recognizes four distinct types of spousal support: (1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d)(1) (2010 & Supp.2012). Alimony in futuro, a form of long-term support, is appropriate when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible. *Gonsewski*, 350 S.W.3d at 107. Alimony in solido, another form of long-term support, is typically awarded to adjust the distribution of the marital estate and, as such, is generally not modifiable and does not terminate upon death or remarriage. *Id.* at 108. By contrast, rehabilitative alimony is short-term support that enables a disadvantaged spouse to obtain education or training and become self-reliant following a divorce. *Id.*
>
> Where economic rehabilitation is unnecessary, transitional alimony may be awarded. Transitional alimony assists the disadvantaged spouse with the "transition to the status of a single person." *Id.* at 109 (internal quotation marks omitted). Rehabilitative alimony "is designed to increase an economically disadvantaged spouse's *capacity* for self-sufficiency," whereas "transitional alimony is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income." *Id.* Consequently, transitional alimony has been described as a form of short-term "bridge-the-gap" support designed to "smooth the transition of a spouse from married to single life."

Transitional alimony is payable for a definite period of time and may be modified only if: (1) the parties agree that it may be modified; (2) the court provides for modification in the divorce decree, decree of legal separation, or order of protection; or (3) the recipient spouse resides with a third person following the divorce. Tenn. Code Ann. § 36-5-121(g)(2).

Tennessee statutes concerning spousal support reflect a legislative preference favoring rehabilitative or transitional alimony rather than alimony in futuro or in solido. *See* Tenn. Code Ann. § 36-5-121(d)(2)-(3); ***Gonsewski***, 350 S.W.3d at 109. . . . Decisions regarding the type, length, and amount of alimony turn upon the unique facts of each case and careful consideration of many factors, with two of the most important factors being the disadvantaged spouse's need and the obligor spouse's ability to pay. ***Id.*** at 109-10.

*Mayfield v. Mayfield*, 395 S.W.3d 108, 115-16 (Tenn. 2012) (internal citation omitted; emphasis in original).

Tennessee courts making an alimony decision must consider the following statutory factors when relevant:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i) (2010).

We review the evidence with these principles in mind. The parties were married for 20 years. Wife testified that during the marriage, husband "was the sole provider and I was a wife and mother and I helped school our children." Husband acknowledged that wife did the housekeeping and homemaking work while they were married. Wife was 54 years old at the time of trial. Wife has a college degree, but, as noted, she had not used her education or training outside the home for two decades at the time of trial. Wife testified that her health is poor, and that she suffers from connective tissue disease, which she described as encompassing several autoimmune diseases, lupus, Sjogren's disease, and blood pressure problems. She testified that she also has periodic inflammation of the

larynx that causes her to lose her voice occasionally, back problems, and spondylitis. Wife stated that her health problems have "drastically affected [her] ability to find adequate employment." At the time of trial, Wife was working about 17.5 hours per week as a caregiver, doing light housekeeping, cooking and laundry for $8 per hour. She was receiving assistance of $379 per month in food stamps. Wife testified that she applied and qualified for TennCare in April of 2011. As of the trial, she had not applied for disability assistance. The trial court found that Wife's income was approximately $600 per month. Wife's affidavit of income and expenses listed a monthly deficit of $2,986.03.

Husband was employed as an engineer, making approximately $80,000 per year, until he lost his job in July of 2011. The record does not reveal husband's age. He did not testify that he had any health problems. He did testify that he lived at the home of a friend, Dan Cox, for about a year after he got laid off. Both husband and Mr. Cox testified that husband had made extensive and diligent efforts to find employment, but had been unsuccessful in the challenging economic climate. Husband testified that friends and family had helped him financially by giving him gifts and paying for some expenses, but that he was earning zero income and had no ability to support himself or his family. The trial court found that Husband had zero income after his unemployment compensation benefits expired in February of 2012.

The parties' primary asset was the marital residence. At the time of trial, wife had recently paid off the mortgage, leaving the property unencumbered. The parties agreed in the MDA to sell the marital residence and equally split the proceeds. At the time of trial, the house was listed for $147,000.[2] The trial court also entered a qualified domestic relations order providing that husband's retirement would be equally divided, but the amount of the retirement account or accounts is not in the record. The proof did not show that either party had any other significant financial asset.

---

[2]At oral argument before this Court, counsel for both parties agreed that the property sold for $140,750 after the trial court's entry of the final judgment, and that the proceeds were equally divided after wife was given additional monies from the proceeds to satisfy the money owed by husband as a result of the trial court's judgment.

These facts establish a "classic case" supporting an award of alimony in futuro. The disparity in the relative earning *capacities* of the parties is great. The marriage was of a long-term duration. Wife made significant intangible contributions to the marriage. *See* Tenn. Code Ann. § 36-5-121(c).[3] Wife, the economically disadvantaged spouse, suffers from significant health problems that make it difficult to work full-time. The General Assembly has stated its intent "that a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by the granting of an order for payment of rehabilitative alimony." Tenn. Code. Ann. § 36-5-121(d)(2). "To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties." *Id.* Considering wife's health, employment history, and age at the time of trial, we do not believe her rehabilitation is feasible. In *Jekot v. Jekot*, this Court, in modifying an award of rehabilitative alimony to an award of alimony in futuro, stated the following:

> Wife has not utilized her career skills in twenty years. It is reasonable to assume that whatever experience she gained those many years ago would be of little or no advantage were

---

[3]Tenn. Code Ann. § 36-5-121(c) is pertinent here, and provides:

> (1) Spouses have traditionally strengthened the family unit through private arrangements whereby one (1) spouse focuses on nurturing the personal side of the marriage, including the care and nurturing of the children, while the other spouse focuses primarily on building the economic strength of the family unit. This arrangement often results in economic detriment to the spouse who subordinated such spouse's own personal career for the benefit of the marriage. It is the public policy of this state to encourage and support marriage, and to encourage family arrangements that provide for the rearing of healthy and productive children who will become healthy and productive citizens of our state.

> (2) The general assembly finds that the contributions to the marriage as homemaker or parent are of equal dignity and importance as economic contributions to the marriage. Further, where one (1) spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

she to seek employment today, and it will take some time for Wife to receive the additional education and training necessary to prepare her for a job offering meaningful remuneration. Further, at the time of trial, Wife was fifty-five years of age, and we do not believe it is realistic to expect that she will be able to effectively compete for employment as she nears an age at which many retire.

232 S.W.3d 744, 753 (Tenn. Ct. App. 2007). In the present case, wife is similarly situated, and the facts are even stronger here in that wife is in poor health and Ms. Jekot was in good health. *Id.* at 754.

Wife has demonstrated a significant need for spousal support. That need is very likely to continue for the foreseeable future, beyond the three years provided for by the trial court's transitional alimony award. Regarding the amount of alimony, the "'real need of the [disadvantaged] spouse seeking the support is the single most important factor .... [and next] the courts most often consider the ability of the obligor spouse to provide support.'" *Oakes*, 235 S.W.3d at 160 (brackets in original; quoting *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995)). This Court has recognized that spousal support "must be administered within the capability of the supporting spouse to provide the needed support." *Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997). Significantly, in this case wife has never argued that husband was willfully unemployed; the evidence at trial was to the effect that husband had been making reasonable and diligent efforts to find employment; and the trial court did not find that husband was willfully unemployed or underemployed. Further, wife has not taken issue with the trial court's finding that husband's income at the time of trial was zero.

Under these circumstances, we find it appropriate to modify the spousal support award by reducing it to $50 per month but by designating it as alimony in futuro. We recognize that this is a nominal amount; "[h]owever, to avoid depriving a spouse of the right to obtain spousal support in the future if there is a need for it, many courts have approved the practice of awarding a nominal amount of alimony in the final decree in order to retain jurisdiction to alter the amount later if the circumstances warrant it." *Justice v. Justice*, No. M1998-00916-COA-R3-CV, 2001 WL 177060 at *5 (Tenn. Ct. App. M.S., filed Feb. 23, 2001); *see also Woods v. Woods*, No. M2002-01736-COA-R3-CV, 2005 WL 1651787 at *11 (Tenn. Ct. App. M.S., filed July 12, 2005) ("In the past, this court has reduced the amount of spousal support when, taking into consideration the paying spouse's other financial obligations, it has determined that the paying spouse would have insufficient income to support himself or herself."). In *Eaves v. Eaves*, this Court approved a nominal alimony award, applying the following reasoning that is equally pertinent to this case:

> [I]f Husband had the ability to help support [wife], a more substantial award of alimony would very likely be appropriate. However, the court justifiably found that, as of the time of trial, Husband did *not* have the ability to help support Wife. The evidence does not preponderate otherwise. If the parties' circumstances eventually change such that more substantial alimony would be appropriate, the award can be revisited, as contemplated by the court's decree. In the meantime, however, a court order cannot create money where none exists, and in this case the evidence supports the court's conclusion that Husband cannot pay Wife more than a nominal alimony while still meeting his own basic expenses.

*Eaves*, No. E2006-02185-COA-R3-CV, 2007 WL 4224715 at *6 (Tenn. Ct. App. E.S., filed Nov. 30, 2007) (emphasis in original). In this case, the parties' MDA contains their agreement "to give each other notice of any new employment or income within seven (7) days of said event." Husband is bound by this provision to promptly notify wife if he obtains employment, and the trial court retains jurisdiction to revisit the amount of alimony if warranted.

B.

Husband argues that the trial court erred in ordering him to pay $4,000 as partial payment of wife's attorney's fees as alimony in solido. The trial court found that wife "cannot pay her attorney's fees without being forced to deplete the assets which she will use to support herself." As the Supreme Court observed in ***Gonsewski***,

> It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. The decision whether to award attorney's fees is within the sound discretion of the trial court. As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36–5–121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, or the spouse would be required to deplete his or her resources in

order to pay them. Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

350 S.W.3d at 113 (internal citations omitted). Our review of an award of attorney's fees is guided by the principle that " 'the allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion.' " *Mimms v. Mimms*, 234 S.W.3d 634, 641 (Tenn. Ct. App. 2007) (quoting *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005)). "Reversal of the trial court's decision [regarding] attorney fees at the trial level should occur 'only when the trial court applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.' " *Church v. Church*, 346 S.W.3d 474, 487 (Tenn. Ct. App. 2010). We do not find such an abuse of discretion here. The evidence does not preponderate against the trial court's finding that wife is unable to pay her attorney's fees without depleting her already meager resources. We consequently affirm the judgment of the trial court awarding wife $4,000 as alimony in solido to pay part of her attorney's fees. Given husband's earning capacity and his receipt of a share of the net proceeds from the sale of the parties' home, and wife's relative disadvantaged economic situation, we find this award appropriate.

C.

Finally, husband argues that the trial court erred in refusing to modify his child support obligation as a result of his decrease in income since the entry of the order requiring him to pay $253 per month. Husband's earlier child support obligation was set by agreed order entered on January 6, 2011, at $862 per month, when he was still employed. The trial court's subsequent order adopting the agreed permanent parenting plan, entered on August 18, 2011, after husband was involuntarily laid off, reduced his obligation to $253 per month. This amount reflected husband's receipt of monies in the form of unemployment compensation of $1,191.66 per month. Husband's unemployment benefits expired in February 2012, however, leaving him with zero income at the time of the hearing conducted on June 14, 2012.

The modification of child support is governed by Tenn. Code Ann. § 36-5-101, which provides that "[u]pon application of either party, the court shall decree an increase or decrease of support when there is found to be a significant variance, as defined in the child support guidelines . . . between the guidelines and the amount of support currently

˅14˅

ordered, unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances that caused the deviation have not changed." *Id.* § 36-5-101(g)(1) (2010). Thus, "the initial inquiry in a petition for child support modification is whether there is a significant variance between the current obligation and the obligation set by the Guidelines." *Wine v. Wine*, 245 S.W.3d 389, 394 (Tenn. Ct. App. 2007) (internal quotation marks omitted). "The parent seeking to modify a child support obligation has the burden to prove that a significant variance exists." *Id.*; *Gulley v. Fletcher*, No. M2012-00718-COA-R3-CV, 2013 WL 492960 at *2 (Tenn. Ct. App. M.S., filed Feb. 7, 2013). "Significant variance" is defined by Tenn. Comp. R. & Regs. 1240‒02‒04‒.05(2)(c) as "at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order." Tenn. Comp. R. & Regs. 1240‒02‒04‒.05(3) provides:

> To determine if a modification is possible, a child support order shall first be calculated on the Child Support Worksheet using current evidence of the parties' circumstances. . . . If the current child support order was calculated using the income shares guidelines, compare the presumptive child support order amounts in the current and proposed orders. . . . If a significant variance exists between the two amounts, such a variance would justify the modification of a child support order unless, in situations where a downward modification is sought, the obligor is willfully and voluntarily unemployed or underemployed, or except as otherwise restricted by paragraph (5) below or 1240-2-4-.04(10) above.

When the parent seeking to modify the child support demonstrates a significant variance, the court is directed as follows:

> Upon a demonstration of a significant variance, the tribunal shall increase or decrease the support order as appropriate in accordance with these Guidelines unless the significant variance only exists due to a previous decision of the tribunal to deviate from the Guidelines and the circumstances that caused the deviation have not changed. If the circumstances that resulted in the deviation have not changed, but there exist other circumstances, such as an increase or decrease in income, that would lead to a significant variance between the amount of the current order, excluding the deviation, and the

> amount of the proposed order, then the order may be modified.

Tenn. Comp. R. & Regs. 1240-02-04-.05(5).

In the present case, a child support order on a Child Support Worksheet using current evidence of the parties' circumstances was not calculated to determine whether a significant variance existed. The difference between husband's income, *i.e.*, $1,191.66 per month,  at the time the then-current child support order was entered and his income, *i.e.*, zero,  at the time of trial is obviously significant. The calculus and analysis would be different if there had been a supported finding that husband was willfully or voluntarily unemployed or underemployed – a finding that would support the imputation of a reasonable income. *Gulley*, 2013 WL 492960 at \*2; *Wine*, 245 S.W.3d at 394; *Richardson v. Spanos*, 189 S.W.3d 720, 726 (Tenn. Ct. App. 2005). As has already been thoroughly discussed above, however, the circumstances in the present case do not warrant a finding of voluntary unemployment or the imputation of income, and, significantly, the trial court did not find a basis for either. Consequently, we vacate the trial court's finding that there was no significant variance shown and remand for a determination of husband's child support obligation under the governing principles discussed herein and the parties' current financial circumstances.

V.

The trial court's award of transitional alimony in the amount of $600 per month is modified to an award of alimony in futuro in amount of $50 per month. The trial court's award ordering husband to pay $4,000 in wife's attorney's fees as alimony in solido is affirmed. The trial court's judgment declining to modify husband's child support obligation is vacated, and the case remanded for further proceedings, consistent with this opinion. Costs on appeal are assessed against the appellant, José Emmanuel Hernandez.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE