IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 28, 2012 Session

## MOLLY RIKA HATFIELD v. RODNEY G. HATFIELD

**Appeal from the Circuit Court for Sumner County**
**No. 2011CV266      C. L. Rogers, Judge**

**No. M2012-00358-COA-R3-CV - Filed February 7, 2013**

In this appeal from a divorce decree, husband asserts that the trial court erred in its property division and award of alimony. We have determined that the trial court erred in awarding almost all of the marital property to wife and, therefore, modify the property division to award the 401k to husband. We further modify the trial court's decision in order to change the alimony in futuro to transitional alimony and to reduce the monthly amount.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and RICHARD H. DINKINS, J., joined.

John D. Kitch, Nashville, Tennessee, and John Ray Phillips, Jr., Gallatin, Tennessee, for the appellant, Rodney G. Hatfield.

Russell E. Edwards and Michael Wayne Edwards, Hendersonville, Tennessee, for the appellee, Molly Rika Hatfield.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Molly Hatfield ("Wife") filed a complaint for divorce against Rodney Hatfield ("Husband") in March 2011; and Husband later filed a countercomplaint for divorce. Three children were born of the marriage, but when the divorce proceedings were initiated the oldest child had reached majority.

In April 2011, Husband was ordered to pay temporary child support in the amount of

$1,422.00 per month and temporary spousal support in the amount of $1,422.00 per month. Husband was also required to continue paying the parties' main household bills such as the utilities and a home equity line of credit. The court further provided that Husband could encroach upon his 401k account, but only "for the purpose of paying child support and temporary alimony." In May 2011, the trial court permitted Husband to draw on the 401k account in the amount of $5,000 for his attorney fees and litigation expenses, and another $5,000 for Wife's attorney fees and expenses.

The divorce hearing was held over two days in November 2011. After the hearing, the trial court entered a memorandum opinion regarding the terms of the permanent parenting plan and division of personal property. Wife was to remain the primary residential parent. For purposes of child support, the trial court found Wife's monthly income to be zero.

In ruling on Husband's motion objecting to a proposed final order, the trial court stated that "it was not the intent of the Court to make an award of alimony in solido." The trial court further explained:

> [Wife] would receive a larger portion of the marital property in lieu of alimony in solido. Larger portion granted to [Wife] was Husband['s] 50% of the marital home net equity. [Wife] had a need of $2,300.00 per month. [Husband] had the ability to pay only $1,500.00 per month. There were no assets from which an award of alimony in solido could be immediately paid.

The trial court entered its final decree on January 18, 2012 and granted Wife a divorce on grounds of adultery. In its division of marital property, the court awarded Wife the equity in the marital home, $242,227.00, and the remaining 401k, $40,872.12. Each party was given his or her own bank account. There were no other marital assets found by the court to have significant value. The court awarded Wife alimony in futuro in the amount of $1,500.00 per month and stated that it was awarding her "a larger share of the property because the Husband cannot afford to pay her need."

Husband appeals and argues that the trial court erred in its division of marital property, in awarding alimony to Wife, and in awarding alimony in futuro instead of transitional alimony.

STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores,*

*Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

Decisions concerning the division of marital property are necessarily fact-specific. *Edenfield v. Edenfield*, No. E2004-00929-COA-R3-CV, 2005 WL 2860289, at *7 (Tenn. Ct. App. Oct. 31, 2005). A trial court has a great deal of discretion in determining the manner in which it divides marital property, and an appellate court will generally defer to a trial court's decision unless that decision is inconsistent with the factors set out in Tenn. Code Ann. § 36-4-121(c) or the evidence preponderates against the decision. *Jolly v. Jolly*, 130 S.W.3d 783, 785-86 (Tenn. 2004); *see also Larsen-Ball v. Ball*, 301 S.W.3d 228, 234-35 (Tenn. 2010).

A trial court has broad discretion to determine the need for spousal support, as well as the appropriate nature, amount, and duration of that support. Tenn. Code Ann. § 36-5-121; *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004). An award of spousal support will not be disturbed on appeal absent an abuse of the trial court's discretion. *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Under the abuse of discretion standard, a reviewing court cannot substitute its judgment for the trial court's judgment. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). Rather, a reviewing court will find an abuse of discretion only if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Therefore, "when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011).

ANALYSIS

*Property division*

After classifying the property of a divorcing couple, a trial court is charged with equitably dividing the marital property. Tenn. Code Ann. § 36-4-121(a). An equitable division of property "is not necessarily an equal one." *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). The division of marital property is not a mechanical process, but rather is guided by the factors in Tenn. Code Ann. § 36-4-121(c). *Kinard v. Kinard,* 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). In this case, the trial court awarded substantially all (99% by Husband's calculations, 96.5% using Wife's numbers) of the marital property to Wife.

-3-

Tennessee Code Annotated § 36-4-121(c) requires a trial court to consider the following factors in making its division of marital property:

(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
(10) The amount of social security benefits available to each spouse; and
(11) Such other factors as are necessary to consider the equities between the parties.

The parties in this case were married for 24 years. At the time of the hearing, both parties were 46 years old. In making its child support determination, the trial court put Husband's gross monthly income at $8,000 and Mother's gross monthly income at zero. Wife completed three years of college, but was primarily a stay-at-home mother after the parties' first child was born. She previously had a real estate license; it had lapsed at the time of the hearing. Wife's highest gross income was $22,245.94 in 1989, a few years after the parties' marriage. Wife testified that she was embarking on a new business venture that she hoped would be successful. In November 2011, Wife asserted that her financial needs (not attributable to the children) were $4,444.00 a month and that her monthly income was

$690.00 per month from part-time marketing. Husband asserted monthly needs totaling $4,892.00 with a net monthly income of $4,982.46.

There is no evidence that factors 3 and 4 affect an equitable distribution. With respect to factor 5, Wife asserts that Husband dissipated marital assets by making withdrawals from the 401k and the home equity line of credit. Taking these withdrawals into account and classifying them as marital property, she argues, would increase Husband's share of the marital estate to 21%. The trial court did not, however, make any finding that Husband was guilty of dissipating marital assets. Husband was authorized by the court to make withdrawals from the 401k to cover his temporary support obligations and to pay both parties' attorney fees and litigation expenses. There is no evidence that the withdrawals made by Husband from the 401k were for any other purposes.

Both parties made use of the home equity line of credit. In a previous divorce proceeding, the trial court entered an order in September 2010 finding no grounds for divorce. At the hearing in the present case, Wife pointed to a withdrawal from the home equity line of credit by Husband in November 2010 that she alleged to be for an attorney in Nevada (where Husband initiated divorce proceedings) and moving expenses. Wife made withdrawals in October 2010 to buy a new heating and air conditioning unit and to pay the property taxes on the marital home. The trial court made no findings with regard to these transactions, which occurred prior to the filing of the complaint in the present divorce proceedings. The evidence does not preponderate against the trial court's implicit finding that there was no dissipation of assets.

Factor 6 is relevant in light of Wife's separate assets valued at $87,303.97. As to factor 8, Wife is unemployed while Husband has stable employment. The remaining factors do not appear to be relevant to an equitable distribution of marital property in this case.

Our Supreme Court has approved the concept of using the division of marital property to help meet a disadvantaged spouse's financial needs. *See Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). While the trial court in the present case expressly stated that it was not awarding alimony in solido, the court made clear that it was awarding "Wife a larger share of the property because the Husband cannot afford to pay her need." The trial court found that Wife needed $2,300 per month and that Husband could afford to pay only $1,500 per month. Under these circumstances, we agree with the strategy adopted by the trial court of awarding Wife a greater share of the marital property. We disagree, however, with the extreme disproportion in the percentages awarded to the two spouses. We hereby modify the trial court's property division to award the remaining value of the 401k to Husband. Wife shall retain all of the equity in the marital home.

*Alimony award*

Husband argues that the trial court erred in awarding Wife alimony because Wife had no need for alimony. Husband further asserts that, even if an award of alimony was appropriate, the trial court erred in awarding alimony in futuro rather than transitional alimony.

In *Gonsewski*, our Supreme Court recognized the principle that "a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors." *Gonsewski*, 350 S.W.3d at 105 (footnote omitted). Decisions regarding the nature and amount of spousal support hinge upon the unique facts of each case and require careful consideration of the factors found at Tenn. Code Ann. § 36-5-121(i). *Oakes v. Oakes*, 235 S.W.3d 152, 160 (Tenn. Ct. App. 2007). Tennessee Code Annotated § 36-5-121(i) instructs the court to consider all relevant factors in determining whether spousal support is appropriate and in determining the nature, amount, length of term, and manner of payment, including the following:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
> (7) The separate assets of each party, both real and personal, tangible and intangible;
> (8) The provisions made with regard to the marital property, as defined in § 36-4-121;
> (9) The standard of living of the parties established during the marriage;
> (10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (11) The relative fault of the parties, in cases where the court, in its discretion,

deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The most important considerations for the court in awarding alimony are the need of the disadvantaged spouse seeking support and the ability of the obligor spouse to pay support. *Gonsewski*, 350 S.W.3d at 110.

Husband argues that Wife "does not have a need for alimony because she has net assets of nearly $400,000.00." This figure refers to the equity in the marital home, the 401k, and Wife's separate assets. (As discussed above, we find that the 401k should go to Husband.) While Wife submitted a statement of income and need reflecting monthly household living expenses of over $4,400, the trial court determined her need to be approximately $2,300 per month. Husband does not identify any flaws in the trial court's calculation of Wife's monthly expenses.

As to Husband's ability to pay, Husband submitted a statement of income and need indicating monthly household expenses of $4,892. In its ruling from the bench, the trial court expressed doubt about some of Husband's figures:

I was not impressed with the four bedroom place [$2,100 per month] out in California close to his girlfriend. I was not impressed with the amount of food he had in there for one person [$525 per month], nor the miscellaneous [and] travel for seeing his children of another thousand dollars.

Thus, the trial court discounted Husband's alleged monthly expenses somewhat. Husband listed a net monthly income of $4,982.46. Husband's child support obligation was set at $1,357.00 per month. Because Husband did not have the ability to pay the full amount of Wife's need, the trial court set alimony at $1,500.00 per month. Subtracting the child support and alimony payments (totaling $2,857.00) from Husband's net income yields a figure of approximately $2,125.00 to cover his monthly living expenses. Under the circumstances, the evidence preponderates against the trial court's finding that Husband had the ability to pay $1,500.00 per month. We, therefore, modify the monthly amount to $1,200.00.

As to the other factors enumerated in Tenn. Code Ann. § 36-5-121(i), the trial court mentioned several in its final decree:

The Court finds that the Wife is economically disadvantaged based on her work history, the highest amount she has made on average in the past fifteen (15) years is $5,000.00. The Court finds that there is no way that further

training or education is going to do her a bit of good, and she is not going to ever do much better than her average earnings over the last five (5) years. This has been a twenty-four (24) year marriage, the Wife has responsibility for the two (2) minor children, the standard of living that she was accustomed to and the fact that the Husband destroyed the marriage by his conduct. The Court is further awarding the Wife a larger share of the property because the Husband cannot afford to pay her need.

On appeal, Husband focuses on Wife's separate assets in making the assertion that she should not have been awarded alimony at all. While each spouse's separate assets is one of the factors listed in Tenn. Code Ann. § 36-5-121(i), it is only one factor. The trial court acted within its discretion to rely more heavily on other factors, including Husband's fault in ending the marriage.

With respect to the trial court's decision to award alimony in futuro, however, we find that the trial court erred. As discussed by our Supreme Court in *Gonsewski*, the Tennessee legislature has established a preference for more short-term forms of alimony over alimony in futuro. *Gonsewski*, 350 S.W.3d at 109. Moreover, it is not always possible to guarantee a spouse the same standard of living enjoyed during the marriage. *Id.* at 113. Although the trial court concluded that Wife could not do better than earning about $5,000 per year, we find no evidence to support this finding. Wife completed three years of college and has had a real estate license; while she will need some time to transition into the work force, we do not find any support for the trial court's determination that Wife will be unable to secure more than minimal earnings. Wife herself testified that she was hopeful about her prospects in developing a cosmetics business. Under the circumstances, we conclude that the trial court erred in awarding alimony in futuro and that an award of transitional alimony is more appropriate. Transitional alimony "is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce . . . ." Tenn. Code Ann. § 36-5-121(d)(4).

We therefore modify the trial court's alimony award to provide for transitional alimony in the amount of $1,200.00 a month for a period of five years.

CONCLUSION

For the reasons discussed, we modify the trial court's decision and affirm the decision as modified. Costs of appeal are assessed against Wife, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE