IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 7, 2019

**KERMIT GEORGE PARKER V. SHERRY ELIZABETH PARKER**

**Appeal from the Circuit Court for Bradley County**
**No. V-14-849      J. Michael Sharp, Judge**

_____

**No. E2018-00643-COA-R3-CV**

_____

A husband and wife were divorced after being married for nineteen years. The trial court divided the marital estate and awarded the wife alimony in futuro. The husband appealed, claiming the trial court erred in classifying a camper as marital property and in awarding the wife long-term spousal support. We affirm the trial court's judgment and award the wife her reasonable attorney's fees incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Howard Luxon Upchurch, Pikeville, Tennessee, for the appellant, Kermit George Parker.

Joshua H. Jenne, Cleveland, Tennessee, for the appellee, Sherry Elizabeth Parker.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

Sherry Elizabeth Parker ("Wife") and Kermit George Parker ("Husband") were married for over seventeen years when Wife moved out of the marital residence in the fall of 2014 to live with relatives. Husband filed a complaint for divorce in December 2014, citing irreconcilable differences. Wife answered Husband's complaint and counter-claimed for divorce on the same grounds. Wife sought alimony and an award of her attorney's fees. When Wife filed her answer and counter-complaint, she also filed a motion seeking alimony pendente lite, which the trial court granted in the amount of $100 per month. No children were born of the marriage.

The parties tried their case on September 2, 2016, and the trial court issued its Final Order on December 14, 2016. The court found that Wife was physically disabled and suffered from mental illness. Her physical impairments included high blood pressure, back problems due to a spinal fusion procedure that she underwent as a child, and Hepatitis C. Her mental illness consisted of bipolar disorder with recurring treatment for depression and anxiety. Husband testified that before Wife moved out of the marital home, she required a full-time caretaker and that he stopped working to care for her. He explained that the social security administration would not disburse social security disability benefits to Wife if he was employed.

Wife testified, and the trial court found, that Husband was very controlling of Wife while they lived together and that Husband acted "in an inappropriate manner" towards Wife. The court determined that Wife was entitled to a divorce based on Husband's inappropriate marital conduct. The court then divided the marital property, awarded Wife alimony in futuro at the rate of $500 per month, and awarded Wife her attorney's fees. Husband appeals, arguing that the trial court erred by (1) classifying the parties' Sunnybrook fifth wheel camper as marital property and assigning it an excessive value and (2) awarding Wife alimony in futuro. Wife seeks an award of the attorney's fees she incurred on appeal.

## II. ANALYSIS

### A. Sunnybrook Fifth Wheel Camper

#### 1. Classification as Marital Property

"Marital property" is defined as all real and personal property acquired by either or both spouses during the marriage that was owned by either or both spouses as of the date when the complaint for divorce was filed. Tenn. Code Ann. § 36-4-121(b)(1)(A). In divorce actions, the trial court is tasked with equitably dividing the marital property between the parties "without regard to marital fault in proportions as the court deems just." *Id.* § 36-4-121(a)(1); *see also Larsen-Ball v. Ball*, 301 S.W.3d 228, 231 (Tenn. 2010). The classification of property as marital is "inherently factual" and will be reviewed in accordance with Tenn. R. App. P. 13(d). *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007). Tennessee Rule of Appellate Procedure 13(d) directs appellate courts to review a trial court's findings of fact "de novo upon the record of the trial court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise."

Husband contends the Sunnybrook fifth wheel camper was not part of the marital estate, subject to an equitable division, when he filed his complaint for divorce in 2014. According to Husband, he and Wife purchased the Sunnybrook fifth wheel camper in 2007. He testified that he later transferred the camper to his brother because Wife was

not eligible to receive social security disability benefits if the parties owned too many assets:

> I had to stop work.  Well, she was already in pretty bad shape as far as mentally and remembering what she was trying to do. . . .  I had to leave work.  We had the old camper.  We had to get rid of the old camper because SSI, you know and the Judge probably knows too, you cannot have stuff like that for her to get SSI.  So I give it to my brother.  It was his.  She signed off on the old title and I did and it's gone.

Husband testified that he never transferred the title of the camper to his brother because it was not necessary to do so if the camper remained in Tennessee.  Husband also testified that the camper was no longer on his and Wife's property.  When asked how long it had been since the camper was located on their property, Husband replied:  "I don't know.  Few years now.  Quite a few years."

In contrast to Husband's testimony, Wife testified that the fifth wheel camper was still parked in the yard of the marital home when she was there in 2015 to collect some of her personal belongings and that she did not sign anything authorizing the transfer of the camper to anyone else.

> Q:  When was the last time you saw the Sunnybrook camper or the camper you-all most recently owned?
>
> A:  It was [there] when we picked up my stuff at the house.
>
> Q:  During the pendency of this case?
>
> A:  Yes.
>
> Q:  Do you recall ever signing any title or authorizing any transfer or gift of that camper to anybody?
>
> A: No.
>
> Q:  You heard your husband's testimony that that camper was given to his brother, I believe.  Have you heard that before today?
>
> A:  Not before today, no.

Wife's aunt identified photographs showing the camper outside the marital home in 2015 and testified that the camper was parked near the marital home when Wife went there to get some of her things in 2015.

Documentary evidence introduced during the trial showed that the fifth wheel camper was registered in Husband and Wife's name as of July 27, 2016, and that Donnie Brannon, who is unaffiliated with this case, registered the camper on August 5, 2016. No evidence was introduced regarding the price Mr. Brannon may have paid for the camper or the circumstances surrounding how Mr. Brannon came to possess the camper.

The trial court did not find Husband's testimony about the Sunnybrook camper credible and found that the camper was, in fact, marital property. According to the trial court:

> Exhibit #21 shows a picture of the Sunnybrook Camper still located at the parties' marital residence on the date and the time that the wife and her relative, Melba Wyatt, went to retrieve some of her personal belongings and/or possessions during March of 2015.

> [Husband] testified that he "gave" the camper to his brother several years ago. In response to questions by [Wife]'s counsel, he testified that the Sunnybrook camper was given in 2009 or about that time to his brother. The court questioned [Husband] about this "gift," and he testified that it was his belief that the parties continued to own the camper until approximately late 2012. Ultimately, [Husband] testified that there was no value in the marital estate from the camper, since it had been gifted away by him. When questioned concerning why the Sunnybrook camper remained at the parties' marital residence even up through and including the time this divorce case was pending, [Husband] had no credible explanation. Ultimately, the court received trial exhibit #9 showing that the Sunnybrook camper was sold and/or transferred on July 27, 2016, which the court notes was less than two months prior to the date of this final hearing. Exhibit #9 shows that the Sunnybrook camper was then registered in the name of Donnie Brannon whom [Husband] described to be the owner. [Husband] had no explanation why the title transfer in July of 2016 was from himself and [Wife] to Mr. Brannon, as opposed to being a transfer from his brother, whom he alleged he and [Wife] gave the camper to many years ago. The court finds [Husband]'s testimony not credible regarding this Sunnybrook Camper. In fact, the court finds [Husband]'s testimony to be completely incredible and troubling. The court finds a great deal of [Husband]'s testimony on many topics to be incredible.

"When it comes to live, in-court witnesses, appellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility because trial courts are 'uniquely positioned to observe the demeanor and conduct of witnesses.'" *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (quoting *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)); *see also Induction Techs., Inc. v. Justus*,

295 S.W.3d 264, 266 (Tenn. Ct. App. 2008). As we explained in *Bowman v. Bowman*, 836 S.W.2d 563, 567 (Tenn. Ct. App. 1991), "[t]his Court [of Appeals] does not pass on the credibility of witnesses." Accordingly, an appellate court "'will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary.'" *Kelly*, 445 S.W.3d at 692 (quoting *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)); *see also Bowman*, 836 S.W.2d at 566 (explaining that a trial judge's finding based on witness credibility "will not be reversed unless there is found in the record concrete and convincing evidence, other than the oral testimony of the witnesses, which contradicts the trial court's findings").

The trial court's finding that Husband and Wife owned the Sunnybrook fifth wheel camper when the divorce action was initiated is supported by Wife's testimony, her aunt's testimony, photographs, and documentary evidence. Husband points to nothing in the record other than his own testimony that contradicts the trial court's finding. Based on the evidence in the record together with the trial court's finding that Husband was not credible, we affirm the trial court's classification of the fifth wheel camper as marital property.

### 2. Valuation

Husband also challenges the trial court's valuation of the fifth wheel camper. In its Final Order, the trial court awarded Wife a judgment for her interest in the camper, which was "one-half the value of the camper on the date of its transfer in July of 2016." The court determined that the value would be the Kelley Blue Book value, "which shall be provided to the court as a post-trial exhibit." The record does not include any post-trial exhibits reflecting the Blue Book value of the camper. However, the trial court issued a Judgment and Final Order in March 2018 that assigned the value of $14,612.50 to the camper based on "the late filed exhibits presented at the request of the Court" and the "average of the proposals from Plaintiff and Defendant."

The record shows that the camper dates from 2001 and that the parties paid $18,000 for it in 2007. Husband testified that the camper did not have much value and that "You can't get nothing for them." He testified that he had recently seen a similar camper for sale for $2,000. Wife valued the camper at $20,000.

When the parties present conflicting evidence of a property's value, the trial court "may place a value on the property that is within the range of the values presented." *Head v. Head*, No. M2009-01351-COA-R3-CV, 2010 WL 3853291, at *3 (Tenn. Ct. App. Sept. 30, 2010); *see also Cole v. Cole*, No. M2006-00425-COA-R3-CV, 2008 WL 1891436, at *2 (Tenn. Ct. App. Apr. 29, 2008). Tennessee Rule of Evidence 701(b) states that "[a] witness may testify to the value of the witness's own property or services." Despite the fact that the record does not include the Kelley Blue Book value of the camper as of July 2016, the value the court assigned was within the range of the

values presented by the parties.[1]   Thus, we affirm the trial court's valuation of the Sunnybrook fifth wheel camper at $14,612.50.

#### B.  Alimony in Futuro

Husband next asserts that the trial court abused its discretion in awarding Wife alimony in futuro.  Tennessee recognizes four types of spousal support:  rehabilitative alimony, transitional alimony, alimony in futuro, and alimony in solido.  Tenn. Code Ann. § 36-5-121(d).   The legislature has indicated its preference that rehabilitative alimony be awarded when appropriate:

> It is the intent of the general assembly that a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by the granting of an order for payment of rehabilitative alimony. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(d)(2).  Where rehabilitation is not feasible and one spouse is economically disadvantaged when compared with the other spouse, however, "the court may grant an order for payment of support and maintenance on a long-term basis or until death or remarriage of the recipient . . . ."  *Id.* § 36-5-121(d)(3); *see also id.* § 36-5-121(d)(4) (providing that award of alimony in futuro may be made "where rehabilitation is not feasible").

"[T]rial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award."  *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).  The *Gonsewski* Court described the standard of review appellate courts apply to a trial court's award of spousal support:

> [A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew*[ *v. Burlew*], 40 S.W.3d [465,] 470 [Tenn. 2001]; *Robertson v. Robertson*, 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in

---

[1]Husband challenges the value the court assigned to the camper, but he does not challenge Wife's entitlement to one-half of its value.

reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

*Id.* at 105-06 (footnote omitted).

A trial court is directed to consider the following factors in determining whether to award the economically disadvantaged spouse alimony:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

- 7 -

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). The most important factors a court is to consider include the need of the spouse seeking support and the ability of the obligor spouse to pay the support. *Bratton v. Bratton*, 136 S.W.3d 595, 604 (Tenn. 2004); *see also Oakes v. Oakes*, 235 S.W.3d 152, 160 (Tenn. Ct. App. 2007).

Wife was forty-four years old at the time of trial and she was unable to work due to her physical and mental condition. Wife received disability payments in the amount of $733 per month, and she introduced an income and expense statement reflecting expenses in the amount of $1,412 per month. The trial court found that Wife "has lived, and continues to live, very frugally" and that she "has a definite need for alimony [that] will continue for the remainder of [her] life." Husband worked as a mechanic at Santek Environmental Services and earned about $3,575 per month at the time of trial. He introduced an income and expense statement reflecting expenses of $2,331.98 per month. The court based its decision to award Wife alimony in futuro on Wife's disability, age, education level,[2] and assets. In its decision, the court wrote:

The court finds that [Wife] has very little, if any, real earning capacity, nor will she have any real earning capacity into the future. The court finds that

_____

[2]Wife testified that she acquired an accounting certificate and a banking certificate following high school.

given her age, mental health, as well as physical health, it is unlikely that her economic status as far as earnings will change much, if any, in the future. On the other hand, the court finds that [Husband] is gainfully employed in a full time position, apparently relatively skilled in his position as a mechanic, and his job prospects in the future are good. While the court understands that [Husband] may have some health related concerns or questions, the court finds that there is no credible evidence before the court that he has any health issue that will hinder his ability to work full time into the future.

Husband contends that the trial court should have awarded Wife rehabilitative alimony rather than alimony in futuro. He bases his argument on Wife's testimony that she would like to go back to school and get a job that she can handle. Wife testified at trial that she would like to work in a veterinarian's or doctor's office. However, the evidence shows that Husband began caring for Wife full-time starting in 2012 and that her mental decline began sometime around 2000. Although Wife testified that she has been feeling better and has been able to do more for herself since she moved out of the marital home, no evidence was introduced suggesting that Wife was able, as of the time of the trial, either to return to school or obtain employment. In addition, no evidence was introduced suggesting that she would be in a position to do so in the future.

Husband fails to point to any evidence showing that Wife will be able to achieve a standard of living comparable to the parties' standard of living during the marriage or to the post-divorce standard of living expected to be available to Husband in the absence of long-term monthly support from Husband. *See Gonsewski*, 350 S.W.3d at 111 (explaining that alimony in futuro is intended to provide long-term support where the obligee spouse is economically disadvantaged relative to the obligor spouse and where rehabilitation is not feasible) (citing Tenn. Code Ann. § 36-5-121(f)(1)). We conclude that Husband failed to show that the trial court abused its discretion in awarding Wife alimony in futuro. As a result, we affirm the trial court's award to Wife of alimony in futuro in the amount of $500 per month.

C. Wife's Attorney's Fees

Wife seeks an award of the attorney's fees she has incurred in defending Husband's appeal. Tennessee Code Annotated 36-5-103(c) grants this Court discretion to award Wife the fees she has incurred on appeal. The version of this statute in effect when this case was tried provided:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any

- 9 -

suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c) (2016). This statute has been interpreted to apply to cases like this, where an alimony recipient is awarded his or her attorney's fees when "forced to defend an action to reduce or terminate that alimony." *Evans v. Evans*, No. M2002-02947-COA-R3-CV, 2004 WL 1882586, at *13 (Tenn. Ct. App. Aug. 23, 2004); *see also Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017); *Richards v. Richards*, No. M2003-02449-COA-R3-CV, 2005 WL 396373, at *13-14 (Tenn. Ct. App. Feb. 17, 2005).

As the Supreme Court explained in *Eberbach v. Eberbach*, the prevailing party is not entitled to an award of his or her fees under the statute; instead, the Court of Appeals is to exercise its discretion to determine whether an award of attorney's fees is appropriate in a particular case. *Eberbach*, 535 S.W.3d at 477. We hereby exercise our discretion in this case to award Wife the reasonable fees she has incurred in defending Husband's appeal. She is the prevailing party on appeal and should not be required to use her limited resources to pay for the defense of the trial court's award to her of either the one-half interest in the fifth wheel camper or long-term spousal support.

## III. CONCLUSION

The judgment of the trial court is affirmed in all respects, and this matter is remanded for the purpose of determining the amount of reasonable attorney's fees Wife incurred on appeal, which amount the trial court shall award to Wife. Costs of appeal shall be assessed against the appellant, Kermit George Parker, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE